OPINION OF THE COURT
Emily Jane Goodman, J.
This is a motion by the defendants for an order pursuant to CPLR 3212 granting summary judgment dismissing the complaint. The complaint alleges that plaintiffs termination from *193 his position as manager of defendant’s restaurant and hotel was a violation of Labor Law § 740 (the Whistleblower Law).
The plaintiff Rudolf Granser was employed as chef and general manager by the defendant Box Tree South Ltd. (Box Tree) over two apparently tempestuous terms, from 1974-1985 and 1991-1992. The defendant Augustin V. Paege (Paege) is the chief executive officer and sole shareholder of Box Tree. The complaint alleges that Paege fired plaintiff because plaintiff threatened to report various health and safety violations to the Department of Buildings. The alleged violations included that the hotel portion of the business was unlicensed; fireplaces were installed in hotel rooms without obtaining a certificate of occupancy; construction work was performed without appropriate permits; the restaurant regularly violated its certificate of occupancy by serving 60 patrons instead of 26; and the premises had inadequate safety exits. Labor Law § 740 prohibits retaliatory personnel action by an employer against an employee who discloses or threatens to disclose an activity of the employer that is in violation of law, rule or regulation when the violation creates and presents a substantial and specific danger to the public health or safety.
Defendants move to dismiss, claiming that (1) plaintiff was not fired, but that he quit; (2) plaintiff, as a manager with control over some of the activities, is an accomplice in the activities who may not recover under the Whistleblower Law; (3) plaintiff has not presented sufficient proof of actual violations; (4) there is no provision in Labor Law § 740 (5) for punitive damages; and (5) Paege as an individual is not a proper defendant.
In opposition to the motion, plaintiff argues that he suffered a retaliatory demotion which defendants concede is included in the definition of a retaliatory personnel action (Labor Law § 740 [1] [e]) and also that the demotion is actionable as a constructive discharge; that the complaint, answers to interrogatories and affidavits show proof of violations; that plaintiff was not an accomplice; that punitive damages are recoverable; and that a controlling party of a thinly capitalized corporation is a proper defendant under Labor Law § 740.
Plaintiff swears in his affidavit in opposition to defendants’ motion (Granser aff) that in December 1992 he "confronted” Paege with various violations of the Administrative Code of the City of New York that had come to his attention, including the lack of a certificate of occupancy, the lack of fire exits *194 and signs and the failure to obtain construction permits. (Granser aff, para 3.) The affidavit states that Granser advised Paege that unless the problems were immediately rectified, he "would be forced to report them to the authorities”, and that, "instead, Paege terminated my services.” (Granser aff, para 3.)
Defendants fail to submit an affidavit from Paege denying Granser’s allegations that the incident between the parties which led to the termination of Granser’s employment occurred after Granser threatened to "blow the whistle” about the violations. Paege denies that he fired Granser, but he does not deny that he demoted Granser; in fact, Paege testified at his deposition that he told Granser that he was going to reduce Granser’s salary because Paege would be taking a larger cut and that thereupon Granser left the room and never returned. Although Granser’s affidavit does not directly address the issue of whether Granser was terminated or demoted, it states that Paege terminated Granser’s services after Granser "advised” Paege that unless the Building Code violations were immediately rectified, Granser would report them to the authorities. (Granser aff, para 3.)
In support of their motion, defendants submit only an affidavit from their attorney, Donald Krueger, and various exhibits including the complaint, answer, selected pages from the Granser and Paege deposition transcripts and plaintiff’s answers to defendant’s interrogatories. None of the exhibits contradict Granser’s allegations that he threatened to blow the whistle on conditions at the restaurant. The relevant portions of Paege’s testimony are as follows:
"Q. Let me bring you back to the conversation you had when he left the employment of the Box Tree. You asked him to go and become the chef?
"A. Yes. I said, go take over the kitchen. Get in the whites.
"He said, he did not want to do that. Then he said, okay, I will do that, but I want to be paid the same.
"I said, I cannot pay you the same because I am taking a bigger part of it, at which point I was expected to negotiate with him a pay somewhat lower, not necessarily much, much lower, but somewhat lower. Since the other responsibilities will be taken away from him, there was no room for that. He ran out of room, and today is first time I have seen him since.” (Paege deposition, at 45-46, exhibit A to Granser aff.)
The relevant pages of Granser’s testimony are as follows:
*195 "Q. Can you tell me the circumstances under which you left the Box Tree.
"A. The date when I was told to leave?
"Q. Did you have a conversation with Mr. Paege regarding your leaving the Box Tree?
"A. That day, yes.
"Q. On December 14th?
"A. Yes.
"Q. Tell me about that conversation.
"A. We had a meeting, he wanted to restructure the Box Tree, things are not working.
"He thought that the food is not adequate. He offered me the position as a chef. I asked him, 'Are they the same terms’?
"And he said, 'No,’ and I said, T consider myself fired,’ and I left.
"Q. Did he ever say to you that you were fired?
"A. I do not recall.
"Q. Did you discuss what conditions, what salary, he would offer you to stay on as chef?
"A. No, but he refused when I asked him if the terms are the same.
"Q. You didn’t take that discussion any further though; is that correct?
"A. No.
"Q. You left on the spot?
"A. Yes.” (Granser deposition, at 51-52, exhibit B to Granser aff.)
Thus, on the record before the court, we must assume that Granser did threaten to blow the whistle on various Administrative Code violations and that Granser was demoted and left his position after the whistleblowing threat.
In order to obtain summary judgment, the movant must establish its defense or cause of action sufficiently to warrant a court in directing judgment in its favor as a matter of law. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067.) The party opposing the motion, on the other hand, must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which the opposing claim rests. (Zuckerman v City of New York, 49 NY2d 557, 562.)
*196 CONSTRUCTIVE DISCHARGE
Plaintiff argues that even if the court determines that he quit, he may maintain this action because the salary reduction constituted a retaliatory demotion and/or a constructive discharge. A comparison of the deposition testimony of Granser and Paege shows that there is a factual issue as to whether plaintiff was terminated or quit. Both sides agree that plaintiff was working as the chef and manager and that on December 14, 1992 Paege told Granser he would no longer be the general manager and that he would be the chef. As noted above, defendants have not disputed that Paege’s statements came after Granser’s whistleblower threats. Thus, this court must find that plaintiff was removed as general manager after he complained about various violations. Defendant argues that the complaint fails to allege that Granser suffered a retaliatory demotion on December 14, and alleges only that he was terminated. In defense, plaintiff argues that the retaliatory demotion is actionable whether specifically pleaded or not and that the demotion amounts to a constructive discharge.
A constructive discharge occurs when "the employer has made working conditions so difficult that a reasonable person will feel forced to resign” (Fischer v KPMG Peat Marwick, 195 AD2d 222 [1st Dept 1994]). In Fischer, the plaintiff, a partner in Peat Marwick, argued that the significant diminution of his role in the partnership pursuant to a reorganization constituted a constructive discharge or expulsion from the firm. The plaintiff conceded that "a true constructive discharge occurs only when an employer ' " 'deliberately makes an employee’s working conditions so intolerable that the employee is forced into an involuntary resignation’ ” ’ [citations omitted].” (Supra, at 225.) The plaintiff argued that "dashing an employee’s reasonable expectations of advancement may create intolerable conditions rising to a level of constructive discharge.” (Supra.) The First Department agreed and held that whether an employer has made working conditions so difficult that a reasonable person would feel forced to resign is a question of fact that should be left to the trier of fact. This holding is applicable to the case at bar. Here, Granser alleges that he was the "General Manager” of the Box Tree on December 14, 1992 when Paege informed Granser that he wanted to restructure the Box Tree and offered Granser the position as chef. It must be left to the trier of fact to determine whether a reasonable person in Granser’s place would have felt forced to *197 resign under such circumstances. The court notes that the record on this motion is quite incomplete in this regard. It is not clear whether Granser served as chef during his first 10 years at the Box Tree, from 1974-1985; whether he was promoted to general manager in August 1991 or whether he was serving as chef and general manager and whether one position or the other is of a higher rank. Thus, the record does not reflect whether Granser, or a reasonable person in his position, would find a demotion from manager to chef so intolerable as to constitute a constructive discharge.* The deposition transcripts refer to Paege’s ordering Granser to return to wearing "the whites”, presumably the chefs uniform. The court cannot substitute for the trier of fact, who will determine whether the plaintiffs demotion from general manager to the chefs position at an establishment such as the Box Tree could have so affected the reasonable expectations of an employee who had risen from the ranks of chef that a reasonable person in that position would have felt forced to resign, thus meeting the standard set by the First Department in Fischer (supra).
The court also disagrees with defendant’s argument that plaintiff’s allegations of retaliatory discharge are not sufficient to plead a constructive discharge claim. It is "the facts, not pleaded conclusions of law, [that] govern the sufficiency of a complaint.” (Fischer v KPMG Peat Marwick, supra, at 224 [finding that the pleading of instances of significant reduction of plaintiffs standing in the partnership was a sufficient pleading of constructive discharge].) Under Fischer, the allegations in the complaint that Granser was terminated as general manager is a sufficient pleading of constructive discharge.
PROOF OF ACTUAL VIOLATIONS
Section 740 (2) (a) prohibits an employer from taking any retaliatory personnel action against an employee who threatens to disclose any "practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety”. It is apparent from the plain words of the statute that violations which would create hazardous fire conditions are within the statute’s purview.
*198 Defendants argue that plaintiff has not shown how the alleged violations imperiled the health and safety of the public and has failed to offer proof, as opposed to mere allegations, of actual violations. As defendant points out, the First Department has held that section 740 "requires that there be not only an actual, as opposed to a possible, violation, but also an actual and substantial present danger to the public health. Reasonable belief as a basis for protection under Labor Law § 740 will not suffice.” (Remba v Federation Empl. & Guidance Serv., 149 AD2d 131, 135 [1st Dept 1989], affd 76 NY2d 801.) Thus, in Connolly v Macklowe Real Estate Co. (161 AD2d 520, 523), a whistleblower claim was dismissed because the pleading failed to "describe how the supposedly illegal activities in question * * * imperil the health or safety of the public” and failed to state which law, rule or regulation the defendants allegedly violated.
Remba and Connolly (supra) are readily distinguishable from this case. Here, the complaint alleges that plaintiff advised Paege of several violations that are obviously threatening to the public health and safety. For example, plaintiff alleged that defendants regularly served 60 people in the restaurant although the certificate of occupancy limited the number of guests to 26. The complaint alleges that there were inadequate safety exits in case of fire or other catastrophe. The complaint alleges that defendants had constructed hotel rooms with fireplaces without proper permits. In Remba, in contrast, the alleged violations involved bookkeeping improprieties. The Court held that the plaintiff’s "statement that improper billing practices constitute a substantial and specific danger to public health and safety, without any supporting facts, is legally deficient and will not support a cause of action.” (Remba v Federation Empl. & Guidance Serv., supra, 149 AD2d, at 138.) In Connolly, the plaintiff alleged that the defendant’s building manager subjected plaintiff and others to physical and verbal abuse. The Court dismissed the complaint because plaintiff did not describe how objectionable conduct toward a few employees imperiled the health and safety of the public nor which law, rule or regulation had been violated. Here, the lack of fire exit signs in a public restaurant are a far cry from bookkeeping irregularities and staff conflict.
The case at bar is closer to Kraus v New Rochelle Hosp. Med. Ctr. (NYLJ, July 29, 1993, at 27, col 4 [Sup Ct, Westchester County]), where the failure of a hospital and its attending doctor to take proper precautions with respect to various *199 invasive surgical procedures created and presented a substantial and specific danger to the public health and safety. The New York State Department of Health required the defendants to make accurate entries on patients’ medical charts and to take various other measures concerning the procedures. Plaintiffs allegations were sufficient under section 740 because the requirements clearly addressed public health concerns. Similarly, here, the very regulations at issue pertain to the public health and safety. Plaintiffs response to defendants’ request for interrogatories specifies those sections of the Administrative Code that are referred to in the complaint. As noted above, defendant has not denied that plaintiff threatened to disclose these violations to the appropriate authorities. Plaintiff alleges in his affidavit that he observed that there were no fire exits and signs and various other violations alleged in the complaint. Defendant has failed to submit an affidavit from anyone with personal knowledge disputing the existence of these violations, nor plaintiffs observation of them. This court disagrees with defendant’s attorney’s statement that plaintiff has not offered any evidence that these violations actually occurred. Plaintiff worked on the premises on a daily basis. He observed the conditions to which the public was exposed. Plaintiffs observation of the absence of fire exit signs alone, without any denial by defendants, is sufficient. The purpose of the Whistleblower Law will not be served by requiring employees with personal knowledge of obviously dangerous unlawful conditions to submit additional proof of the existence of the conditions. Such a requirement would make it more difficult for employees to state a cause of action under section 740, a result that is clearly inappropriate to a statute enacted for the public benefit. Therefore, this court finds that plaintiffs sworn statements as to his observation of dangerous unlawful conditions is a sufficient showing of violations which present an actual and substantial present danger to the public health.
PLAINTIFF’S STATUS AS EMPLOYEE UNDER SECTION 740
Defendants also argue that plaintiff may not recover under section 740 because plaintiff was an accomplice in the illegal acts of the employer. Defendants do not offer any affidavit in support of this claim; rather, they rely on Granser’s deposition testimony that Paege had previously authorized him to oversee the repair of various hazardous conditions and that Paege had similarly instructed him to straighten out various IRS *200 matters. There is no evidence that Paege delegated all responsibilities concerning compliance with health and safety laws to Granser and, indeed, it is questionable whether such delegation would absolve defendants from liability under the Administrative Code. (See, Allen v Cloutier Constr. Corp., 44 NY2d 290 [1978] [prohibiting any delegation of duties imposed by statute which establishes work place safety requirements].) Similarly, landlords may not delegate their duty as the landlord to keep the premises in a safe condition, although agreements to indemnify another through insurance are enforceable. (Morel v City of New York, 192 AD2d 428 [1st Dept 1993].) Defendants’ position as the owner and operator of the restaurant may be analogized to the defendants in both of the above cases.
Moreover, this court disagrees that an absentee employer may avoid liability under section 740 by delegating to its employee responsibility for enforcement of safety laws, or that such a delegation would render the employee an "accomplice” in the employer’s failure to comply with the law. Section 740 does not exclude "supervisors” from the protection of the Labor Law. The term "supervisor” is defined at section 740 (1) (f) as: "Any individual within an employer’s organization who has the authority to direct and control the work performance of the affected employee; or who has managerial authority to take corrective action regarding the violation of the law, rule or regulation of which the employee complains.” The term "employee” is defined in subdivision (1) (a) as "an individual who performs services for and under the control and direction of an employer for wages or other remuneration.”
The term "supervisor” is not included in the definition of "employer”, which is defined in subdivision (1) (b). The statute prohibits a series of actions taken by an "employer” against an "employee”. (Labor Law § 740 [2].) A "supervisor” is an "employee” under the statute if the supervisor meets the qualifications of subdivision (1) (f) and (a). Thus, if a supervisor is an individual who performs services under the control and direction of an employer for wages or other remuneration, the supervisor is protected under section 740 (2). The term "supervisor” is defined in subdivision (1) (f) in order to elucidate the prohibition of subdivision 2 (a), which makes it unlawful for an employer to take any action against an employee because such employee has disclosed or threatened to disclose "to a supervisor” an activity, policy or practice of the employer that *201 is in violation of law. There is no indication that "supervisor” is defined to exclude such an employee from the statute’s protections. Rather, the purpose of the definition appears to be to expand the protection given to employees by emphasizing that complaints to supervisors who may not be owners or manager are protected.
Additionally, subdivision (2) (c) protects employees who refuse to participate in unlawful activities that present a substantial and specific danger to the public health or safety. (Remba v Federation of Empl. & Guidance Serv., 149 AD2d, at 136, supra.) There is no exception for employees who may initially participate in an alleged unlawful activity and then, at a subsequent point, refuse to engage in such activities and seek the protection of the law. In today’s economic climate of high unemployment and uncertain job security it is not difficult to imagine that an employee may avoid confronting an employer when first observing questionable or even unlawful practices. An employee in that position, who subsequently places his job in jeopardy by speaking out in the interest of public health and safety, is to be commended, not punished, for overcoming his or her initial reticence at blowing the whistle. There simply is no basis to interpret the statute to exclude from its protection employees who go along with an employer’s unlawful scheme prior to the employee’s asserting the rights afforded under the Whistleblower Law.
Defendant’s reliance on DaSilva v Clarkson Arms (189 AD2d 619 [1st Dept 1993]) in this regard is misplaced. In DaSilva, the Court granted additional discovery to the plaintiff’s former employer to determine whether the plaintiff bore some responsibility for the act attributed to defendants’ former president. The case involved theft and homicide, acts that obviously were outside the scope of the plaintiff’s employment. Here, all that the deposition testimony indicates is that plaintiff previously brought certain electrical problems to Paege’s attention and that Paege instructed the plaintiff to have the electrical condition repaired. It defies all notions of justice to say, as do defendants, that an employer’s instruction to its employee to hire a contractor to correct a dangerous electrical condition will either insulate the employer from liability or render the employee an "accomplice” if the work is not completed satisfactorily. This is particularly offensive given the facts here, where Paege appears to have been an absentee owner, subjecting his employees to the same hazardous conditions as the public. Moreover, plaintiff here has alleged nu *202 merous other violations which the defendant owner failed to cure and which are not alleged to have been delegated to Granser. Thus, there is no basis for determining that plaintiff is precluded from recovering under section 740 because he is an accomplice in the illegal acts of his employer. If such evidence is uncovered during discovery, defendants may move on such newly discovered evidence.
PUNITIVE DAMAGES
Defendants next argue that plaintiff is not entitled to an award of punitive damages if he prevails under section 740. Defendants are correct. The First Department has held that section 740 (5) only provides for equitable relief which mandates back pay only. (Scaduto v Restaurant Assocs. Indus., 180 AD2d 458, 460 [1st Dept 1992].) Subdivision (5) lists the specific remedies that are available to an employee when he has been made the victim of retaliation by his employer. As the First Department noted in Remba (supra), it is for the Legislature, not the courts, to expand the protection and remedies of the Whistleblower Law.
LIABILITY OF THE INDIVIDUAL DEFENDANT
Lastly, defendants argue that the claim should be dismissed against individual defendant Paege on the ground that individual employees of a corporation are not proper parties under section 740. The term "employer” is defined in the Labor Law as "any person, firm, partnership, institution, corporation, or association that employs one or more employees.” Here, the verified complaint alleges that plaintiff was employed by "defendants” (emphasis added). The unverified answer admits only that plaintiff was employed by the Box Tree Restaurant and Hotel in New York City. Defendants have not proffered any admissible evidence nor sworn pleading to support their position that Paege is not an employer.
Their motion is therefore unsupported and may not be granted on that basis alone.
There is an additional reason why Paege is not entitled to the relief he seeks. Paege testified at his deposition that he informed Granser that he was lowering Granser’s salary because Paege was taking a bigger part of it. It is well settled that an individual employee of a corporation may be joined as a party defendant in a lawsuit if it is alleged that the individual personally profited from the acts that are com *203 plained of. (Di Nardo v L & W Indus. Park, 74 AD2d 736 [4th Dept 1980]; Citycorp Retail Servs. v Wellington Mercantile Servs., 90 AD2d 532 [2d Dept 1982].) Thus, Paege’s own testimony provides the basis for joining him as a party in this action.
It is therefore ordered that defendant’s motion is denied in its entirety except that plaintiffs claim for punitive damages is struck.

 The court also notes that the Statute of Limitations for section 740 causes of action is three years and that plaintiff therefore may amend to allege a cause of action for retaliatory demotion.