Hassan **NEMAZEE** individually and derivatively on behalf of Medibuy.com, Inc. a/k/a Medibuy, Inc., Plaintiff,

v.

**PREMIER, INC.**, Premier Purchasing Partners L.P., Premier Plans, LLC, Healthtrust Purchasing Group, L.P., HCA, Inc. f/k/a Columbia/HCA Healthcare Corp., Medibuy.com, Inc. a/k/a Medibuy, Inc., John Does 1–10 who are Persons Who May Be Interested in this Action, but who are unknown to plaintiff including the general partner of Healthtrust Purchasing Group, L.P., Defendants.

No. 02 Civ. 2799(AGS).

United States District Court, S.D. New York.

Nov. 13, 2002.

Eric W. Berry, Eric W. Berry Law Office, New York City, for Hassan Nemazee.

Richard C. Schoenstein, Paul, Hastings, Janofsky & Walker, LLP, New York City, for Premier, Inc., Premier Purchasing Partners, L.P., Premier Plans, LLC.

Thomas J. Moloney, Clearly, Gottlieb, Steen & Hamilton, New York City, for Mediabuy.Com, Inc.

Paul B. Sweeney, Hogan & Hartson, L.L.P., New York City, for HCA, Inc., Healthtrust Purchasing Group, L.P.

## MEMORANDUM ORDER

SCHWARTZ, District Judge.

## I. Introduction

Plaintiff Hassan Nemazee originally filed this derivative action individually and on behalf of Medibuy.com, Inc. a/k/a Medibuy, Inc. ("Medibuy") in the Supreme Court of the State of New York, New York County. In his complaint, Nemazee alleged that certain transactions involving defendants were unlawful because the non-Medibuy defendants used their positions as controlling shareholders and board members of Medibuy to engage in self-dealing in violation of their fiduciary duties. Premier, Inc., Premier Purchasing Partners L.P., and Premier Plans LLC removed the action to this Court, invoking diversity jurisdiction.[1] Nemazee moved to remand the action, claiming that no diversity existed because both he and Premier Purchasing Partners, L.P. are citizens of New York, and seeks attorneys' fees and costs. Defendants have cross-moved to transfer venue to the Middle District of Tennessee. For the reasons set forth below, plaintiff's motion to remand is granted and defendants' cross-motion is denied as moot. Plaintiff's motion for attorneys' fees and costs is also denied.

## II. Factual Background

### A. The Parties

Plaintiff Hassan Nemazee is a resident of New York, New York. See Complaint, at ¶ 1 (appended to Nemazee's Notice of Motion as Exhibit ("Ex.") 1).[2] Nemazee holds 111,110 shares of common stock in defendants Medibuy.com, Inc. a/k/a Medibuy, Inc. ("Medibuy"). See id. at ¶ 1; Notice of Motion Ex. 3.

Defendant Medibuy is a corporation organized and existing under the laws of Delaware with its principal place of business in Nashville, Tennessee. See Complaint, at ¶ 7. Medibuy uses electronic commerce technology to connect buyers and sellers of medical supplies. See Memorandum of Law in Support of Nemazee's Motion for an Order Remanding the Case to the Supreme Court of the State of New York, and an Award of Costs and Attorneys [sic] Fees ("Plaintiff's Motion"), at 2. Medibuy also provides a bidding and auction system which permits buyers to purchase medical supplies from vendors worldwide. See id. at 2. Medibuy's customers include large healthcare supply purchasers such as hospitals and hospital purchasing groups. See id at 2. Hospital purchasing groups are cooperatives formed by various hospitals in order to achieve volume discounting in the purchase of medical supplies. See id. at 2. Medibuy also offers its customers the ability to sell excess medical inventory through its auction service. See id. at 2.

---

1. Although the three Premier entities removed the case, all defendants oppose remand to state court. See, e.g., Letter to Judge Schwartz dated May 21, 2002, appended as Exhibit 7 to Defendants' Notice of Motion for an Order Transferring the Case to the Middle District of Tennessee Pursuant to 28 U.S.C. § 1404(a).

2. The "Complaint" refers to the complaint Nemazee filed in the Supreme Court of the State of New York, County of New York, Index No. 600919/02. Subsequent to removal to this Court, Nemazee amended his complaint ("Amended Complaint"). For purposes of considering remand, the Court looks to the original state court complaint.

Defendant Premier, Inc. ("Premier") is a corporation organized and existing under the laws of Delaware with its principal place of business in San Diego, California. *See* Complaint, at ¶ 3; Notice of Removal of Civil Action Under 28 U.S.C. § 1441(b) ("Notice of Removal"), at ¶ 4 (appended to Nemazee's Notice of Motion as Ex. 2). Premier owns or has interests in a large chain of hospitals. *See* Plaintiff's Motion, at 2.

Defendant Premier Purchasing Partners L.P. ("PPP") is a limited partnership with its principal place of business in San Diego, California. *See* Complaint, at ¶ 2. PPP has hundreds of limited partners, some of whom are citizens of New York. *See* Notice of Removal, at ¶ 7. PPP is a hospital purchasing group beneficially owned by Premier. *See* Plaintiff's Motion, at 2.

Defendant Premier Plans LLC ("Premier Plans") is a corporation organized and existing under the laws of Delaware with its principal place of business in San Diego, California. *See* Complaint, at ¶ 4; Notice of Removal, at ¶ 4. Nemazee states that Premier is the sole member of Premier Plans, which is the corporate general partner of PPP. *See* Complaint, at ¶ 3.

Defendant Healthtrust Purchasing Group, L.P. ("HPG") is a limited partnership organized and existing under the laws of Delaware with its principal place of business in Nashville, Tennessee. *See* Complaint, at ¶ 5; Notice of Removal, at ¶ 4. None of HPG's limited or general partners is or was a citizen or resident of New York. *See* Notice of Removal, at ¶ 4. HPG is a hospital purchasing group affiliated with HCA. *See* Plaintiff's Motion, at 3.

Defendant HCA, Inc., f/k/a Columbia/HCA Healthcare Corp. ("HCA") is a corporation organized and existing under the laws of Delaware with its principal place of business in Nashville, Tennessee. *See* Complaint, at ¶ 6; Notice of Removal, at ¶ 4. HCA owns or has interests in a large chain of hospitals. *See* Plaintiff's Motion, at 3. Nemazee states that HCA is the largest member of HPG, and that HCA controlled HPG by virtue of the fact, *inter alia*, that James A. Fitzgerald served as an officer and director of HCA and was the president of HPG. *See* Complaint, at ¶ 30.

Defendants John Does 1 through 10 are parties unknown to Nemazee, including the general partner of HPG, who may have an interest in this action. *See* Complaint, at ¶ 8; Notice of Removal, at ¶ 5. The general partner of HPG is not a citizen or resident of New York. *See* Notice of Removal, at ¶ 5.

### B. The Allegations [3]

In 1999, Hassan Nemazee purchased 111,110 shares of Medibuy common stock from another investor for $1 million in a private transaction. *See* Declaration of Hassan Nemazee in Support of His Motion for An Order Remanding the Case to the Supreme Court of the State of New York, and an Award of Costs and Attorneys [sic] Fees Pursuant to 28 U.S.C. § 1447(c) ("Nemazee Decl."), at ¶ 5. Nemazee alleges that during the entire two and one-half years he has held Medibuy common stock, Medibuy has never announced, noticed, or conducted a meeting of shareholders, despite the fact that annual shareholders' meetings are required under Delaware law and the Medibuy by-laws. *See* Complaint at ¶ 46. Nemazee also alleges that Medibuy refused to provide him with financial information about the company or the

---

**3.** The Court accepts as true for purposes of this motion the factual allegations made by plaintiff Nemazee.

identity of the members of the Board of Directors. *See id.* at ¶¶ 49–51.

In April or May 1999, Medibuy acquired empactHealth.com, an online marketplace for medical products that had been formed by HCA. *See* Complaint, at ¶ 28. In connection with Medibuy's acquisition of empactHealth.com, HCA received a 16 percent interest in Medibuy. *See id.* at ¶ 29. Nemazee states that HCA's interest in Medibuy common stock has increased so that it now owns roughly 26 percent of Medibuy common stock. *See id.* at ¶ 29. As part of the same transaction, defendant HPG entered into an outsourcing agreement with Medibuy in which Medibuy became the exclusive electronic commerce marketplace that HPG offered to its members. *See id.* at ¶ 30; Plaintiff's Motion, at 3. Over the course of this outsourcing agreement, HPG was obliged to pay Medibuy royalties and fees totaling $72 million. *See id.* at 3.

In March 2000, Medibuy entered into an agreement to acquire Premier Health Exchange LLC, which was then PPP's affiliated electronic commerce provider. *See* Complaint, at ¶ 25. Nemazee states that in consideration for its acquisition of Premier Health Exchange LLC, Medibuy issued 28.5 million shares of common stock to "either Premier or PPP," representing a 44 percent interest in Medibuy. Complaint, at ¶ 26. PPP also entered into an outsourcing agreement with Medibuy in which Medibuy became the exclusive electronic commerce marketplace that PPP offered to its 1,800 members for a six-year period. *See* Plaintiff's Motion, at 2. Under the terms of this outsourcing agreement, PPP was obliged to pay Medibuy royalties and fees totaling $159 million over the six-year period. *See id.* at 3.

Following these transactions, HCA and Premier or PPP owned a substantial majority of Medibuy's stock. Both Premier and HCA placed representatives on Medibuy's board of directors, and Premier's chief executive officer, Rick Norling, served as chairman of the Medibuy board. *See* Complaint, at ¶ 32. Edward Pearson, a former HCA officer, became an officer of Medibuy and later Medibuy's chief executive officer. *See id.* at ¶ 32. In late 2001, Medibuy granted HPG and PPP "substantial concessions" of their obligations under their respective outsourcing agreements. Plaintiff's Motion, at 3; *see also* Complaint, at ¶¶ 33–40. Nemazee contends that Medibuy's forgiveness of PPP's and HPG's contractual obligations was instigated by interested directors and their allies. *Ibid.* Specifically, Nemazee states that "Medibuy's forgiveness of a portion of PPP's contractual obligations was instigated by Premier and Norling, and was approved by HCA's representatives on the Medibuy board (who had consented to the reduction of PPP's obligations to Medibuy in consideration for Norling and the other Premier representatives agreeing to a similar forgiveness of the obligations of HCA's affiliate, HPG)." Complaint, at ¶ 34. According to Nemazee, as a "direct result" of the modification of its contractual entitlement from PPP and HPG, Medibuy will experience a "substantial loss" during the first two quarters of 2002 after earning a profit in the last quarter of 2001. Complaint, at ¶ 39.

Additionally, in early 2002, Medibuy entered into an agreement with Neoforma, Inc. ("Neoforma"), another company that provides electronic commerce services to hospital buying groups and medical suppliers, for Neoforma to acquire Medibuy. *See* Complaint, at ¶ 41. As a condition of its acquisition of Medibuy, Neoforma requested that PPP and HPG modify their respective outsourcing agreements in a manner which would financially benefit Medibuy. *See id.* at ¶ 42. However, PPP

and HPG refused to agree to the modifications requested by Neoforma and thereby caused Neoforma not to acquire Medibuy. *See id.* at ¶ 43. Nemazee contends that Premier and HCA controlled, respectively, PPP and HPG in connection with the refusal of PPP and HPG to modify their outsourcing agreements. *See id.* at ¶ 44. By refusing to modify the outsourcing agreements, Premier and HCA allegedly breached their fiduciary duties to Nemazee and the other non-controlling Medibuy shareholders. *See id.* at ¶ 45.

Nemazee also states that on October 30, 2001, Nemazee and other shareholders sent a letter prepared by shareholder Jochen Noelke ("Noelke letter") to the Medibuy board of directors to demand that it schedule a shareholders' meeting and that Medibuy refrain from agreeing to any modification of the PPP and HPG outsourcing agreements until those agreements were addressed at a shareholders' meeting.[4] Medibuy did not respond to the Noelke letter. *See id.* at ¶ 47. Defendants claim the Noelke letter was not sent to or received by Medibuy. *See* Memorandum of Law in Opposition to Motion to Remand and in Support of Motion to Change Venue ("Defendants' Opposition"), at 11.

On March 25, 2002, twenty days after the Complaint was filed, Nemazee submitted a proxy letter[5] in which he (through his proxy) submitted two proposed resolutions:

Proposal No. 1: Nemazee proposes that Medibuy, Inc. sue Premier, Inc. to rescind the contracts which were completed with Premier, Inc. on December 21, 2001, and to reinstate Medibuy's contracts with Premier as they existed prior to December 21, 2001.

Proposal No. 2: Nemazee proposes that Medibuy, Inc. sue Health Trust Purchasing Group ("HPG") to rescind the contracts which were completed with HPG on December 21, 2001, and to reinstate Medibuy's contracts with HPG as they existed prior to December 21, 2001.

*See* Notice of Motion for an Order Transferring the Case to the Middle District of Tennessee Pursuant to 28 U.S.C. § 1404(a) ("Defendants' Notice of Motion") at Ex. 5.

## C. The Instant Action

Based on the foregoing, Nemazee brought a derivative action against the above defendants in the Supreme Court of the State of New York, County of New York on March 6, 2002. In his Complaint, he alleges various breaches of fiduciary duty and unlawful self-dealing. He seeks damages as well as declaratory and injunctive relief. On April 11, 2002, Premier, PPP, and Premier Plans removed the action to this Court.[6] *See* Notice of Removal. Nemazee now moves to remand the action pursuant to 28 U.S.C. § 1447(c). Defendants argue that PPP was fraudulently joined to destroy diversity and cross-move to transfer the action to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a). Nemazee also moves for attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).

---

4. The name is incorrectly listed as "Noelke" in the Complaint.

5. Nemazee characterizes the document as a "proposed resolution." The Court refers to the document as a "proxy letter" solely for ease of identification, without legally categorizing it as such.

6. The removal was timely under 28 U.S.C. § 1446(b) because the thirty-day period in which an action may be removed is triggered by receipt of an initial pleading, not the filing thereof. No defendant received the initial pleading before March 12, 2002.

## III. Legal Standards

■ Defendants assert that this Court has subject matter jurisdiction solely by virtue of diversity of citizenship. *See* Notice of Removal, at ¶ 3; *cf.* 28 U.S.C. §§ 1332, 1441. Defendants concede that PPP is a limited partnership that has New York citizens among its limited partners. *See* Notice of Removal, at ¶ 7. For purposes of diversity jurisdiction, a limited partnership has the citizenship of each of its general and limited partners. *See, e.g., Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir.2000) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)). It is not disputed that plaintiff Nemazee is a citizen of New York. If PPP is properly named as a defendant, this Court lacks subject matter jurisdiction and remand would be appropriate. However, defendants argue that diversity nonetheless exists because PPP was fraudulently joined.

■ It is well established that a plaintiff may not defeat a federal court's diversity jurisdiction by naming parties who have no real connection with the controversy as defendants. *See, e.g., Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998). The burden of demonstrating that a defendant has been fraudulently joined falls squarely upon the defendant:

> In order to show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that the plaintiff can state a cause of

action against the non-diverse defendant in state court.

*Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir.2001) (quoting *Pampillonia*, 138 F.3d at 461). Joinder is considered fraudulent where "there can be no recovery under the law of the state on the cause alleged." *Whitaker*, 261 F.3d at 207 (quoting *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F.Supp. 1274, 1276 (S.D.N.Y.1984)).

## IV. Legal Analysis

### A. Motion to Remand the Action to New York State Court

■ As noted above, joinder may be found to have been fraudulent either where the plaintiff committed outright fraud in his pleading or where there is no possibility of legal recovery against a defendant. Defendants do not appear to allege that Nemazee committed "outright fraud" by naming PPP as a defendant. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir.2001) (quoting *Pampillonia*, 138 F.3d at 461). Indeed, a review of the Complaint and other documents reveals that Nemazee appears to have established a reasonable basis for naming PPP as a defendant. The question of whether PPP was fraudulently joined therefore turns on whether recovery is *per se* precluded against it. The Court notes that the standard is stringent. Any possibility of recovery, even if slim, militates against a finding of fraudulent joinder; only where there is "no possibility" of recovery is such a finding warranted. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 207 (2d Cir.2001) (quoting *Pampillonia*, 138 F.3d at 461).

### 1. Sufficiency of Demand

Under Delaware law,[7] a complaint in a shareholder derivative suit must "allege

---

7. Delaware law is applicable because Medi-

buy is a Delaware corporation. *See, e.g. RCM*

with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Del. Ch. Ct. R. 23.1 ("Rule 23.1"). The purpose of the pre-suit demand is to "assure that the stockholder affords the corporation the opportunity to address an alleged wrong without litigation, to decide whether to invest the resources of the corporation in litigation, and to control any litigation which does occur." *Spiegel v. Buntrock,* 571 A.2d 767, 773 (Del.1990). This requirement is a recognition of the important principle that directors manage the business and affairs of corporations. *See id.* at 773.

■■■ Under Rule 23.1 and the cases interpreting it, a plaintiff who wishes to file a derivative suit must either make a demand on the company's board (and argue wrongful refusal if and when the board refuses the demand) or argue that demand need not be made because it would be futile. Under Delaware law, a plaintiff may not both make a demand on the board of directors and simultaneously argue that making such a demand would be futile. *See Spiegel,* 571 A.2d at 775 ("a stockholder who asserts a derivative claim cannot stand neutral, in effect, with respect to the board of directors' ability to respond to a request to take action, by simultaneously making a demand for such action *and* continuing to argue that demand is excused."). Moreover, once a plaintiff makes a demand on the board, even a post-suit demand, the original argument that making a demand would be futile, is moot. *See Spiegel,* 571 A.2d at 775. While this approach has been criticized in other jurisdictions as being "arbitrary," "too restrictive," and having "no logical basis," *Carolina First Corp. v.*

*Secs. Fund, Inc. v. Stanton,* 928 F.2d 1318,

*Whittle,* 343 S.C. 176, 539 S.E.2d 402, 411 (S.C.App.2000), the *Spiegel* rule is well-established in Delaware. *See, e.g., Levine v. Smith,* 591 A.2d 194, 212 (Del.1991) *overruled on other grounds by Brehm v. Eisner,* 746 A.2d 244 (Del.2000).

Nemazee and defendants appear to agree that the Noelke letter did not constitute a pre-suit demand. Defendants claim the Noelke letter was neither sent to nor received by Medibuy. *See* Defendants' Opposition, at 11. Regardless, defendants contend that the Noelke letter "does not identify any alleged wrongdoers, describe any harm that would result were Medibuy to restate the agreements, or seek the relief that Plaintiff is seeking on behalf of Medibuy in this action–*i.e.,* that Medibuy initiate a lawsuit against PPP to redress any perceived harm." *Id.* at 11. Defendants conclude that the Noelke letter is "therefore insufficient to constitute a proper demand under Delaware law." *Id.* at 11. Nemazee states that defendants are "100% right on this point." Reply Memorandum of Law in Further Support of Nemazee's Motion for an Order Remanding the Case to the Supreme Court of the State of New York and in Opposition to the Motion to Transfer Venue to the Middle District of Tennessee ("Plaintiff's Reply"), at 3. For the reasons noted by defendants and in light of the parties' agreement on this point, the Court finds that the Noelke letter did not constitute a demand on the Medibuy board.

■ Defendants argue that recovery against PPP is precluded because Nemazee failed to satisfy the requirement under Delaware law that he make a proper pre-suit demand that Medibuy assert the claim against PPP prior to commencing his action. *See* Defendants' Opposition, at 2. Instead, defendants argue that Nemazee's

1328 (2d Cir.1991).

proxy letter constituted a post-suit demand, which, under *Spiegel*, would preclude him from claiming demand futility.

■ Defendants set forth the standards under Delaware law for determining whether a demand is sufficient. Defendants correctly state that a shareholder's demand must "(1) identify the alleged wrongdoers, (2) describe the factual basis of the alleged acts, (3) describe the harm caused to the corporation, and (4) request remedial relief." Defendants' Opposition, at 9 (citing *Levner v. Saud*, 903 F.Supp. 452, 456 (S.D.N.Y.1994); *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del.1985); 5 *Moore's Federal Practice*, § 23.1.08[2][b] (3d ed.1997)). The proxy letter at issue here fails to identify the alleged wrongdoers, fails to describe the factual basis of the alleged acts, and fails to describe the harm caused to the corporation. The remedial relief requested in the proxy letter is for Medibuy to sue Premier and HPG. It does not mention PPP. Thus, under the standards articulated by defendants themselves, the proxy letter cannot constitute a Rule 23.1 demand. Additionally, the Court notes that the proxy letter itself is addressed to the shareholders rather than to the board of directors.

■ Defendants argue that even if the demand itself was insufficient, "by attempting to make a demand on the corporation, the shareholder plaintiff 'tacitly concedes the independence of the majority of the board to respond.'" Defendants' Opposition, at 14 (quoting *Levine v. Smith*, 591 A.2d 194, 212, *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del.2000)). However, *Levine* never states that "by attempting to make a demand" the plaintiff tacitly concedes the independence of the board; instead, it states that "by making demand upon a board ..." *Id.* at 212. In so claiming, defendants incorrectly attempt to inject a subjective element into the requirements for demand sufficiency. Defendants argue that Nemazee characterizes the proxy letter as a demand in his Amended Complaint. Leaving aside the fact that the Court looks to the original Complaint for remand purposes, defendants provide no legal support for the argument that plaintiff's subsequently-expressed intentions should trump the plain language of the proxy letter. An *ex post facto* expression of intent cannot create a sufficient demand where one is lacking, nor can it serve to vitiate an otherwise sufficient demand.[8] Additionally, for the reasons set forth above, it lacked the requisite substantive specificity required to suffice as a formal demand. Given the significant consequence of making a demand under Delaware law, the Court of Chancery has expressed serious reservations about "construing ambiguous communications to be demands." *Leslie v. Telephonics Office Techs., Inc.*, 1993 WL 547188 (Del.Ch. Dec.30, 1993). Judging the proxy letter by the standards set forth by defendants, the Court finds that Nemazee did not make a post-suit demand by submitting his proxy letter. Nemazee may therefore argue that making a demand would have been futile.

---

**8.** Defendants cite *Spiegel* for the proposition that a defendant must either make a demand or claim demand futility but may not do both. *Spiegel* is inapposite on this point, however, because in that case it was clear that Spiegel's demand was sufficient (albeit post-suit). *See Spiegel*, 571 A.2d at 771–72. In that case, the plaintiff submitted a letter to the board of directors in which he "formally demand[ed]" that the board act to redress the wrongs in the enclosed complaint. *Id.* at 772. Here, Nemazee's proxy letter was submitted to the shareholders and did not enclose or reference the Complaint.

## 2. Demand Futility

■ Defendants contend that even if Nemazee did not waive his claim to demand futility, such futility cannot be established. The question of whether making a demand would have been futile is a mixed question of law and fact. The Court need not examine defendants' contention, because to do so would require the Court to draw inferences against Nemazee. Here, the removal to federal court was based on a claim of fraudulent joinder. As noted *supra*, in order to maintain such a claim, defendants must show there is "no possibility" that Nemazee can state a cause of action against PPP. An examination of the Complaint and motion papers reveals that there is a possibility that Nemazee will be able to prove demand futility. This finding is based on a variety of factors, including but not limited to the alleged substance of the concession transactions themselves, the alleged conflicts of interest of various directors, Medibuy's alleged failure to conduct shareholder meetings, and Medibuy's alleged intransigence in providing Nemazee with basic information, such as the identities of the members of the board of directors. *See generally* Complaint, Plaintiff's Reply. Consequently, defendants' contention of fraudulent joinder fails and this Court is deprived of subject matter jurisdiction over the action.

For purposes of the instant remand motion, the Court need not find that demand would have been futile. The Court makes no determination as to this question, other than holding that such a finding is possible. By so holding, defendants' claim of fraudulent joinder fails and this Court is deprived of subject matter jurisdiction over the action. The question of whether, in fact, demand would have been futile should be determined by the New York State Supreme Court.

## B. Motion to Transfer the Venue to the Middle District of Tennessee

■ Having rejected defendants' contention that PPP was fraudulently joined, this Court lacks subject matter jurisdiction to hear this action. The action is remanded to the New York State Supreme Court. Consequently, defendants' cross-motion for transfer of venue to the Middle District of Tennessee is denied as moot.

## C. Nemazee's Motion for Attorneys' Fees & Costs

■ Nemazee moves for an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). This statute states that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Plaintiff correctly notes that the payment of fees pursuant to 28 U.S.C. § 1447(c) does not depend on a showing of bad faith. *See, e.g., Garbie v. DaimlerChrysler Corp.,* 211 F.3d 407, 410 (7th Cir.2000). However, in that case, cited by Nemazee, the Seventh Circuit did note that "almost every step of Chrysler's conduct throughout this litigation *has* been in bad faith [ ... ]." *Id.* at 410–11. The Second Circuit has noted that in light of the *ex parte* nature of removal, plaintiffs may be exposed to "the possibility of abuse, unnecessary expense and harassment if a defendant removes improperly, thereby requiring plaintiff to appear in federal court, prepare motion papers and litigate, merely to get the action returned to the court where the plaintiff initiated it." *Circle Indus. U.S.A. v. Parke Constr. Group,* 183 F.3d 105, 109 (2d Cir. 1999). The framers of 28 U.S.C. § 1447(c) were aware of this fact and nonetheless left the determination of costs to the discretion of the Court. In this case, after reviewing the motion papers in this action, the Court finds no basis for imposing fees

and costs and therefore determines that fee-shifting would be inappropriate in this case.

## V.  Conclusion

For the reasons set forth above, Nemazee's motion to remand the action to the New York State Supreme Court is GRANTED; defendants' cross-motion to transfer the action to the Middle District of Tennessee is DENIED AS MOOT. Nemazee's motion for attorneys' fees and costs is DENIED.

The Clerk of the Court is directed to close the file in this action.

**SO ORDERED.**