RETIREMENT PROGRAM FOR EM-
PLOYEES OF THE TOWN OF FAIR-
FIELD, Retirement Program for Po-
lice Officers and Firemen of the Town
of Fairfield, and Town of Fairfield,
Plaintiffs,

v.

NEPC, LLC and KPMG,
LLP, Defendants.

Civil No. 3:09cv506 (JBA).

United States District Court,
D. Connecticut.

July 16, 2009.

David S. Golub, Jonathan M. Levine, Silver, Golub & Teitell, Stamford, CT, Richard C. Robinson, Pullman & Comley, Hartford, CT, for Plaintiffs.

Jennifer L. Chunias, Roberto M. Braceras, Goodwin, Procter & Hoar, Boston, MA, Steven David Ecker, William James Gullotta, Cowdery, Ecker & Murphy, L.L.C., Hartford, CT, Gary F. Bendinger, Gregory G. Ballard, R. Corey Worcester, Howrey, LLP, New York, NY, James H. Bicks, Robert S. Hoff, Wiggin & Dana LLP, Stamford, CT, for Defendants.

## RULING ON PLAINTIFFS' MOTION TO REMAND

JANET BOND ARTERTON, District Judge.

This case arises out of investment losses in connection with Bernard Madoff's Ponzi scheme.[1] Two retirement plans (the "Plans"), along with the Town of Fairfield (collectively, "Plaintiffs"), initiated this action in Connecticut state court, alleging that NEPC, LLC ("NEPC"), a pension-investment consultant, and KPMG, LLP ("KPMG"), an auditing and advisory firm, failed to perform due diligence on the Plaintiffs' Madoff-related investments. In counts one, two, and three of their complaint, the Plaintiffs assert claims of negligence, breach of fiduciary duty, and unfair trade practices against NEPC; in count four, Plaintiffs claim negligence against KPMG. NEPC removed the case to federal court on the ground that KPMG was fraudulently joined and should not defeat diversity jurisdiction. The Plaintiffs disagree and have moved to remand.

### I. Background

The Plaintiffs' complaint alleges the following facts. In 1997, the Plans invested in a limited-partnership hedge fund known as the "Tremont fund,"[2] which was managed by Madoff. The Plans invested millions of dollars in the fund over the next eight years. In early 2006, the Tremont fund retained KPMG to audit its financial statements for the preceding fiscal year. The audit report generated by KPMG in

---

1. Readers unfamiliar with the infamous Madoff investment scandal can consult Wikipedia for more background information. *See* Wikipedia, *Bernard Madoff*, http://en.wikipedia.org/wiki/Bernard_Madoff (last visited July 10, 2009). For a more traditional source, see Diana B. Henriques, *Madoff Is Sentenced to 150 Years for Ponzi Scheme*, N.Y. Times, June 30, 2009, at A1.

2. The fund bore the name of the Plans' pension consultant, Tremont Partners, Inc. Owing to subsequent name changes, the fund is described in the complaint as the American Broad Market Fund, L.P.

March 2006 represented that KPMG "had performed the audit in accordance with generally accepted accounting standards" and "had a reasonable basis for concluding that the financial statements of [the Tremont fund] for 2005 fairly presented, in all material respects, the financial position of [the fund] as of December 31, 2005," and that the Tremont fund "had a total return on partnership capital for the year ended December 31, 2005 of 9.01%." (Compl. at 14–15.) In light of Madoff's admission that his investment operations were in fact a Ponzi scheme, "the financial statements of [the Tremont fund] for 2005 did not fairly present . . . the financial position of" the fund, and thus the financial data contained within KPMG's audit report was not accurate. (*Id.* at 15.)

Consequently, Plaintiffs allege, KPMG's course of conduct in conducting the audit for the Tremont fund constituted negligence, because: (1) "KPMG knew, or should have known, that the proper performance of it[s] audit function reasonably required a due diligence investigation of Bernard Madoff"; (2) "KPMG negligently failed to undertake a proper risk assessment and failed to properly examine . . . and evaluate" the bases for its representations; (3) "KPMG lacked a reasonable basis" for its conclusions about the financial soundness of the Tremont fund, but negligently represented otherwise; and (4) "KPMG knew or should have known that the partners of [the Tremont fund], including the plaintiff Plans, would rely on its audit report . . . in determining whether to maintain their" investments in the fund. (*Id.* at 16–17.) Given that the Plans did in fact rely on KPMG's representations, Plaintiffs allege:

> Had defendant KPMG advised the partners of [the Tremont fund] in its audit report of the financial statements of [the fund] for 2005 that it was unable to certify that there was a reasonable basis

for concluding that the financial statements of [the fund] for 2005 presented, in all material respects, the financial position of [the fund] as of December 31, 2005, the plaintiff Plans would have withdrawn their investment from [the fund] in March 2006 and would not again have invested in an investment vehicle that placed funds under the management of Bernard Madoff.

(*Id.* at 17.)

The following year, KPMG again audited the Tremont fund. In its audit report, KPMG certified the financial soundness of the fund based in its statements for the 2006 fiscal year. The Plaintiffs thus repeat their substantive allegations, contending that, had KPMG's second audit report been the product of due diligence and not negligence, the Plans would have withdrawn their investments in the Tremont fund. Finally, "[a]s a result of the negligence of KPMG," Plaintiffs allege, they "have sustained financial loss." (*Id.* at 20.) Following these audits, the Plans transferred their investments in the Tremont fund to the Maxam fund, also managed by Madoff. By the end of November 2008, just before Madoff's Ponzi scheme was exposed, the Plans' total investment was more than $40 million.

After being served with the complaint and summons on February 27, 2009, NEPC timely removed the case on March 30, invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. According to NEPC, its right to removal derives from its position that KPMG— which, owing to the citizenship of its member partners, is non-diverse from the Connecticut-based Plaintiffs—was fraudulently joined to defeat diversity jurisdiction. Specifically, NEPC argues that joinder was fraudulent for "two independent reasons": (1) Plaintiffs' claim against KPMG

is subject to mandatory arbitration; and (2) Plaintiffs have failed to establish that they suffered any damages as a result of KPMG's alleged conduct because "Plaintiffs fully *redeemed* their entire investment in June 2007 and December 2007." (Not. Removal at 4–5.) Thus, the question before the Court is whether Plaintiffs' allegations against KPMG are legally viable.

## II. Discussion

■■■ In *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir.1998), the Second Circuit confirmed that "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." Under the doctrine of fraudulent joinder, "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir.2004). "The defendant bears the heavy burden of proving this circumstance by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." *Id.*[3]

■■■ In practice, this "no possibility" standard is akin to a more rigorous version of the "failure to state a claim" standard expressed in Rule 12(b)(6). *See, e.g., Nemazee v. Premier, Inc.*, 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) (noting that "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder"). But because this is a jurisdictional inquiry, a court can look beyond the face of the complaint in assessing whether there is any possibility of recovery. In *Pampillonia*, for example, one of the defendants,

Planters Lifesavers Co., argued that its parent company, RJR Nabisco, was not implicated by the plaintiff's claims of retaliatory discharge. 138 F.3d at 460. The Second Circuit affirmed the district court's conclusion that RJR Nabisco was fraudulently joined based on averments in an affidavit that the parent company was separately managed and had no involvement in the employment matters of the subsidiary. *Id.* at 462. Coupled with the fact that the only factual allegation in the complaint implicating RJR Nabisco concerned its place of incorporation, the Second Circuit held that there was no possibility of a viable claim against the corporate parent. *Id.* at 461–62.

## A. Arbitration Agreement

NEPC first argues that KPMG was fraudulently joined by making reference to the terms of the engagement between KPMG and the Tremont fund. NEPC attached to its notice of removal a letter from a KPMG partner, dated November 23, 2004, which purports to "confirm [the] understanding ... to provide professional services to certain partnerships ... within Tremont Capital Management." The letter—which is entirely redacted except for sections captioned "Dispute Resolution" and "Dispute Resolution Procedures"—further provides that "[a]ny dispute or claim arising out of or relating to the engagement letter between the parties ... (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution practices set forth in Appendix II."

---

3. *Pampillonia* also recognized that a defendant asserting fraudulent joinder can meet its burden by showing that the plaintiff has committed "outright fraud" in the pleadings, 138 F.3d at 461, but NEPC disclaims such a basis for removal.

■ Plaintiffs contend that the existence of this agreement does not foreclose the possibility of a viable claim against KPMG. Plaintiff cite, among other cases, *Cobalt Mining, LLC v. Bank of America, N.A.,* which explained: "Courts that have considered the issue of whether an arbitration agreement between a plaintiff and a non-diverse defendant renders the joinder of the non-diverse defendant fraudulent have uniformly concluded that the existence of an arbitration agreement does not yield the conclusion that Plaintiff has failed to state a colorable basis for a claim." No. 07–598, 2008 WL 695887, at *3 (W.D.Ky. Mar. 12, 2008) (collecting cases; quotation marks omitted). As the district court in *Cobalt Mining* reasoned, an arbitration agreement does not divest a court of jurisdiction, and the agreement might be found inapplicable or unenforceable. *Id.* at *3–*4.

In its opposition brief, NEPC does not quarrel with this apparently well-settled legal proposition. Rather, NEPC argues that "additional factors exist which, together with the arbitration agreement, compel the conclusion that KPMG's joinder was fraudulent." (NEPC's Opp'n at 19–20.) Thus, as NEPC clarified at oral argument, it relies on the strength of its second ground for finding "no possibility" of recovery against KPMG.

**B. Negligence Against KPMG**

Second, NEPC argues that the joinder of KPMG was fraudulent because Plaintiffs cannot establish the elements of their negligence claim against KPMG in count four.

■ The elements of a negligence claim are duty, breach, causation, and damages. *Catz v. Rubenstein,* 201 Conn. 39, 513 A.2d 98, 100–01 (1986). Under Connecticut law, "the test of proximate cause is whether the defendant's conduct

is a substantial factor in bringing about the plaintiff's injuries." *Paige v. St. Andrew's Roman Catholic Church Corp.,* 250 Conn. 14, 734 A.2d 85, 91 (1999). In the complaint, Plaintiffs allege that KPMG failed to conduct due diligence on the Tremont fund. If KPMG had acted in accordance with its duty as an auditor, Plaintiffs allege, it would have uncovered Madoff's fraud and prevented the future financial losses by the Plans after they joined another Madoff investment vehicle. Plaintiffs allege that they suffered financial damages as a result of KPMG's negligence. Having pleaded the elements of negligence, Plaintiffs have sufficiently stated a claim against KPMG.

NEPC argues that Plaintiffs suffered no loss because they redeemed their entire investment in the Tremont fund, which KPMG audited. Plaintiffs tackle that issue in their allegations in count four, however: but for KPMG's negligent audit of the Tremont fund, Plaintiffs allege, they would not have trusted Madoff-related funds with further investments, because they otherwise would not have been able to verify that he was an honest broker. This may be a question of fact as to whether KPMG proximately caused this later financial harm, but, as many Connecticut courts explain, this is traditionally not resolved at the pleadings stage. *See, e.g., Hughes v. Nat'l Car Rental Sys., Inc.,* 22 Conn.App. 586, 577 A.2d 1132, 1135 (1990) (noting that the issue of proximate cause ordinarily "should be submitted to the trier of fact . . . and not determined by the court on a motion to strike"). *A fortiori,* if proximate cause is typically left for the trier of fact, so, too, should it survive the far more demanding "no possibility" inquiry in the context of a claim of fraudulent joinder.

Citing *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931) (Cardozo, J.), and *Credit Alliance Corp. v. Arthur*

*Andersen & Co.*, 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), NEPC further claims that Plaintiffs' claim against KPMG has no possibility of success due to the limited duties of auditors in claims of professional negligence. These cases and others, NEPC argues, establish a "fundamental principle" relating to the narrowed "scope of an accountant's liability based on the accountant's knowledge or intent." (NEPC's Opp'n at 13.) Alternatively, NEPC contends, Plaintiffs' negligence claim also fails as a matter of law if viewed as alleging misrepresentation under § 552 of the Restatement (Second) of Torts because, "[u]nder the Restatement test, an accountant must *intend* that the information influence the particular transaction in question, or know that the party that receives the information intends to use it in connection with the particular transaction or a substantially similar transaction." (NEPC's Opp'n at 14.)

The applicability of these rules in Connecticut is not clear. As Judge Goettel concluded in *Gerber Trade Finance, Inc. v. Davis, Sita & Co.*, 128 F.Supp.2d 86, 96 (D.Conn.2001), "no Connecticut appellate decision to date has addressed the contours of accountants' liability to non-clients under Connecticut law." But even assuming for the sake of argument that either *Ultramares* or the Restatement governs the analysis here, the Plaintiffs' allegations survive the very limited "no possibility" inquiry for the purpose of assessing fraudulent joinder.

Plaintiffs' complaint alleges that the "Plans had a limited partnership interest in" the Tremont fund, that "KPMG was retained by [the fund] to perform an audit of the financial statements of [the fund] for the benefit of the partners of [the fund], including the plaintiff Plans," and that "KPMG knew or should have known that the partners of [the fund], including the

Plaintiff plans, would rely on its audit report ... in determining whether to maintain their partnership interests in [the fund]." (Compl. at 14, 17.) Under the *Ultramares* line of cases, "a relationship 'so close as to approach that of privity' remains valid as the predicate for imposing liability upon accountants to non-contractual parties for the negligent preparation of financial reports." *Credit Alliance*, 493 N.Y.S.2d 435, 483 N.E.2d at 115 (quoting *Ultramares*, 174 N.E. at 446). *Credit Alliance* itself acknowledged that a partnership interest—like the Plans' interest in the Tremont fund—may be enough to satisfy this privity-like requirement. *Id.*, 493 N.Y.S.2d 435, 483 N.E.2d at 117 & n. 9 (noting that "as a member of the limited partnership and as a specifically intended beneficiary of the partnership's contract with the accountants, the limited partner might well have been considered actually in privity with the accountants"). Plus, the Plaintiffs' allegations fall within the parameters of the Restatement rule, given that the Plans are alleged to have been within the "limited group ... for whose benefit and guidance" the KPMG audits were intended, and that KPMG is alleged to have known that the Plans would rely on the audits for a particular transaction or "a substantially similar transaction." Restatement (Second) of Torts, § 552(2) (1977).

Thus, although the adequacy of the Plaintiffs negligence claim against KPMG has the potential to be a thorny issue, it is not one that should be conclusively resolved at this stage. The doctrine of fraudulent joinder requires a defendant to show, by clear and convincing evidence, that a claim is so flawed that it would be impossible for the plaintiff to recover. That there is at minimum a recognized dispute on this issue in the case law is a sufficient basis on which to conclude that

Plaintiffs' claim against KPMG survives this assessment.

### III. Conclusion

NEPC's burden of proving fraudulent joinder is a "heavy" one. Given that the arbitration agreement is conceded to be insufficient by itself to meet that burden, and given the foreseeability issues deriving from Plaintiffs' claimed status as both a partner and beneficiary of the Tremont fund, NEPC has not offered clear and convincing evidence showing the legal impossibility of the claim against KPMG in count four.

Accordingly, because the Court concludes that KPMG was not fraudulently joined, this Court lacks jurisdiction over this case due to lack of complete diversity. Plaintiffs' motion to remand [Doc. # 30] is granted. The Clerk is directed to remand this case to the Connecticut Superior Court, Judicial District of Fairfield at Bridgeport.

IT IS SO ORDERED.