Robinson ULYSSE, Plaintiff,

v.

**AAR AIRCRAFT COMPONENT SERVICES, AAR Parts Trading, Inc., AAR Aircraft & Engine Group, Inc., AAR Aviation Trading, Inc., AAR Allen Aircraft Corp., Joe DeLardi, Ian Smith, and Salim Kemzy, Defendants.**

No. 11–cv–2622 (ADS)(GRB).

United States District Court, E.D. New York.

Jan. 23, 2012.

Law Office of Andrew C. Laufer, PLLC by: Andrew C. Laufer, Esq., of Counsel, New York, NY, for Plaintiff.

Epstein Becker & Green, P.C. by: Carrie Corcoran, Esq., of Counsel, New York, NY, for Defendants.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The Plaintiff in this case, Robinson Ulysse, commenced an action in New York State court pursuant to New York State Labor Law § 740 for retaliation in the work place. The Defendants, AAR Aircraft Component Services, AAR Parts

Trading, Inc., AAR Aircraft & Engine Group, Inc., AAR Aviation Trading, Inc., and AAR Allen Aircraft Corp. (collectively "AAR"), as well as the individual Defendants Joe DeLardi, Ian Smith, and Salim Kemzy, subsequently removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. Presently before the Court is the Plaintiff's motion to remand the action back to state court. In addition, the Defendants have filed a cross motion to dismiss the case on the grounds of preemption and failure to state a claim.

## I. BACKGROUND

The following facts are derived from the pleadings and the parties' submissions on the motions.

On August 18, 1998, the Plaintiff commenced his employment as a mechanic with the Defendants AAR in Garden City, New York. AAR is in the business of repairing and replacing commercial aircraft parts. The individually named Defendants were employed by AAR in supervisory capacities.

The Plaintiff alleges that in 2008, his supervisors required and directed him to use substandard, unserviceable and faulty aircraft parts, which was in contradiction to an instruction book he had previously received which described, among other things, whether to repair or replace airliner parts. The Plaintiff claims that this directive from his supervisors was also in violation of the rules governing the use of replacement parts as delineated by the Federal Aviation Administration (FAA) rules and regulations. Ulysse further alleges that he complained to his supervisors on several occasions with regard to the quality of the replacement parts, warning that it could interfere with a plane's ability to operate which would endanger the plane's occupants. However, in response to these complaints, the Plaintiff claims

that his supervisors retaliated against him by criticizing his work and that he was eventually terminated on April 17, 2009.

■ On March 26, 2010, the Plaintiff filed an action against the Defendants in the Supreme Court of the State of New York, County of Kings, alleging a cause of action for violations of New York State Labor Law § 740 (the "whistleblower statute" or "Section 740"). Under Section 740, "[a]n employer shall not take any retaliatory personnel action against an employee because such employee ... (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." In order to maintain an action under Section 740, a plaintiff must: " 'establish a violation of a law, rule or regulation, which violation must be actual and not merely possible,' " and (2) demonstrate " 'that the lack of compliance presents a substantial and specific danger to the public health or safety.' " *Perez v. Consol. Edison Corp. of N.Y.*, No. 02 Civ. 2832, 2006 WL 2707316, at *16 (S.D.N.Y. Sept. 20, 2006) (quoting *Connolly v. Harry Macklowe Real Estate Co., Inc.*, 161 A.D.2d 520, 555 N.Y.S.2d 790, 792 (1st Dep't 1990)).

On March 17, 2011, the state court action was dismissed, without prejudice, for failure to allege the violation of a law, rule, or regulation with the requisite particularity and specificity necessary to support a cause of action under Section 740. *See* § 740(1)(c) (" 'Law, rule or regulation' includes any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance.")

On May 5, 2011, the Plaintiff commenced a second civil action against the

same Defendants in New York State court, again bringing a cause of action for violations of New York Labor Law § 740. This complaint was nearly identical to the one in the first action, with the exception that the Plaintiff alleged that the Defendants violated specific FAA regulations.

On June 1, 2011, the Defendants filed a notice of removal to the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. §§ 1441 and 1446. According to the Defendants, the action is removable because the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Plaintiff's New York Labor Law § 740 claim is completely preempted by federal law, specifically the Airline Deregulation Act of 1978. In addition, the Defendants assert as an alternative basis for removal that there is diversity jurisdiction pursuant to § 1332 because AAR resides outside of New York and the Plaintiff is a New York resident. According to the Defendants, the Plaintiff fraudulently joined the individual in-state Defendants in order to defeat federal jurisdiction.

On June 17, 2011, the Plaintiff filed a motion pursuant to 28 U.S.C. § 1447(c) to remand this action back to the Supreme Court for the State of New York, County of Kings, alleging that it was improperly removed to federal court.

## II. DISCUSSION

### A. *Legal Standard for Removal*

A cause of action that was initially filed in state court may be removed by a defendant where "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Accordingly, one requirement of removal jurisdiction is that there must exist a basis for the exercise of the district court's original jurisdiction.

Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction over all civil actions arising under the Constitution and laws or treaties of the United States. However, where removal is predicated upon federal question jurisdiction, the "well-pleaded complaint rule" governs. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Under this rule, "a case may be filed in federal court only if a federal question appears on the face of the plaintiff's 'well-pleaded-complaint.' " *Hernandez v. Conriv Realty Assocs.*, 116 F.3d 35, 38 (2d Cir.1997). The Supreme Court stated that this rule "severely limits the number of cases in which state law creates the cause of action that may be initiated in or remanded to federal district court, thereby avoiding more-or-less automatically a number of potentially serious federal-state conflicts." *Franchise Tax Bd. v. Const. Laborers Vac. Trust*, 463 U.S. 1, 9–10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). The Supreme Court has added that:

> Whether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute ... must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 58 L.Ed. 1218 (1914). Even if a valid federal defense exists, the Second Circuit has held that the case cannot be removed unless there exists either a federal question or diversity jurisdiction on the face of the original complaint. *Hernandez*, 116 F.3d at 38.

However, an exception to the well-pleaded complaint rule exists "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). As the Supreme Court has explained, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" and is thus removable. *Id. See also Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) ("Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal").

"There are several well-established principles governing the propriety of removal petitions under Section 1446, which the court must keep in mind...." *Town of Moreau, et al. v. New York State Dept. of Envtl. Conservation, et al.,* No. 96 Civ. 983, 1997 WL 243258, at *1 (N.D.N.Y. May 5, 1997) (internal quotations and citation omitted). First, "[r]emoval jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litig.,* 929 F.Supp. 174, 178 (S.D.N.Y.1996) (citing *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 109, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined."); *State of New York v. Lutheran Center for the Aging, Inc.,* 957 F.Supp. 393, 397 (E.D.N.Y.1997) ("Removal statutes are to be strictly construed"). Thus, "all doubts should be resolved in favor of remand." *Leslie v. BancTec Serv. Corp.,* 928 F.Supp. 341, 347 (S.D.N.Y.1996) (internal quotations and citations omitted). In addition, "[t]he burden is on the removing party to prove that it has met the requirements for removal." *Codapro Corp. v. Wilson,* 997 F.Supp. 322, 325 (E.D.N.Y.1998).

### B. As to Whether the Plaintiff's State Law Claim is Preempted by Federal Law

#### 1. Preemption Generally

The federal preemption doctrine stems from the Supremacy Clause, U.S. Const. art. VI, cl. 2, and the "fundamental principle of the Constitution [ ] that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council,* 530 U.S. 363, 372, 120 S.Ct. 2288, 147 L.Ed.2d 352 (2000). "Under the Supremacy Clause of the United States Constitution, state laws that conflict with federal law are without effect, and are preempted." *N.Y. Rest. Ass'n v. N.Y. City Bd. of Health,* 556 F.3d 114, 123 (2d Cir.2009) (citation omitted); *see also Island Park, LLC v. CSX Transp.,* 559 F.3d 96, 101 (2d Cir.2009). "The purpose of Congress is the ultimate touchstone in every preemption case." *N.Y. Rest. Ass'n,* 556 F.3d at 123 (citing *Altria Group, Inc. v. Good,* 555 U.S. 70, 129 S.Ct. 538, 543, 172 L.Ed.2d 398 (2008)). "Congressional intent primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it." *Island Park,* 559 F.3d at 101 (citing *Altria Group,* 129 S.Ct. at 543).

There are three types of preemption:

(1) express preemption, where Congress has expressly preempted local law; (2) field preemption, where Congress has

legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law; and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives. *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir.2010) (internal quotation marks omitted). "By their nature, field preemption and conflict preemption are usually found based on implied manifestations of congressional intent." *Id.* (citing *Altria Group*, 129 S.Ct. at 543). Conflict preemption exists when "compliance with both state and federal law is impossible," and a subset of conflict preemption referred to as "obstacle preemption" applies "when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 351 (2d Cir.2008) (quoting *United States v. Locke*, 529 U.S. 89, 109, 120 S.Ct. 1135, 146 L.Ed.2d 69 (2000)) (internal quotation marks omitted). "State law is in 'irreconcilable conflict' with federal law, and hence preempted by federal law, when compliance with the state statute would frustrate the purposes of the federal scheme." *Id.* at 351 (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 659, 102 S.Ct. 3294, 73 L.Ed.2d 1042 (1982)).

The preemption analysis begins "with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 129 S.Ct. 1187, 1194–95, 173 L.Ed.2d 51 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (modifications omitted)). This is often referred to as the "presumption against preemption". Moreover, "there is a rebuttable presumption against the preemption of the states' exercise of their historic police power to regulate safety matters." *Goodspeed Airport LLC v. East Haddam Inland Wetlands & Watercourses*, 634 F.3d 206, 210 (2d Cir. 2011).

### 2. The Airline Deregulation Act and the Whistleblower Protection Program

The Defendants argue that remand is improper and that removal of the Plaintiff's case to federal court was appropriate because although the Complaint is pleaded in terms of state law, it is in reality a claim based on federal law. In particular, the Defendants claim that a state law claim based on allegations that an airline servicer retaliated against a whistleblower is preempted by the federal Airline Deregulation Act, as amended by the Whistleblower Protection Program.

The Airline Deregulation Act of 1978 ("ADA") was enacted to encourage air transportation systems to rely on competitive market forces to determine the quality, variety and price of air services after Congress concluded that market forces would promote the " 'efficiency, innovation, and low prices' " as well as the "variety [and] quality of . . . air transportation services." *Morales v. Trans World Airlines*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting 49 U.S.C.App. §§ 1302(a)(4), 1302(a)(9)); *see also In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06 Civ. 1775, 2008 WL 5958061, at *16 (E.D.N.Y. Sept. 26, 2008). In order to "ensure that the States would not undo federal deregulation with regulation of their own," Congress included an express preemption provision. *Morales*, 504 U.S. at 378, 112 S.Ct. 2031. The express pre-

emption provision of the ADA is codified at 49 U.S.C. § 41713(b)(1), and provides,

> Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service of an air carrier* that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1) (emphasis added).

▮▮▮ In 2000, the ADA was amended by the Whistleblower Protection Program, 49 U.S.C. § 42121 ("WPP"). The WPP "protects air-carrier employees who report actual or alleged air-carrier safety violations or who file proceedings regarding actual or alleged air-carrier safety violations." *Botz v. Omni Air Int'l,* 286 F.3d 488, 491 (8th Cir.2002). It is "a detailed and comprehensive regulatory scheme." *Id.* Essentially, it protects employees from retaliation by their employers for a variety of whistleblowing conduct based on federal air safety violations.

### 3. Supreme Court Precedent

The Supreme Court has not directly addressed the issue at hand—whether a state law claim based on allegations that an airline servicer retaliated against a whistleblower falls within the preemption of the ADA—but has addressed the interpretation, scope, and application of the ADA's preemption provision in other contexts.

In *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), the Supreme Court ruled that (1) "state enforcement actions *having a connection with, or reference to* carrier rates, routes, or services are preempted, (2) such preemption may occur even if a state law's effect on rates, routes or services is only indirect; (3) it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) preemption occurs at least where state laws have a significant impact related to Congress' deregulatory and preemption-related objectives." *Rowe v. N.H. Motor Transport Ass'n,* 552 U.S. 364, 370–71, 128 S.Ct. 989, 995, 169 L.Ed.2d 933 (2008) (citing to *Morales,* 504 U.S. at 378, 384, 386–87, 390, 112 S.Ct. 2031) (internal quotations omitted). However, the Court recognized that the ADA does not preempt state laws that affect rates, routes, or services in "too tenuous, remote, or peripheral a manner." *Morales,* 504 U.S. at 390, 112 S.Ct. 2031. Thus, even though the Court found that the preemption language in the statute was broad, the provision was not found to create complete or absolute field preemption. The Court explicitly declined to say where, or how, "it would be appropriate to draw the line". *Id.*

The Court in *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), refined the standard developed in *Morales* and stated that the ADA preemption provision's "ban on enacting or enforcing any law 'relating to rates, routes, or services' is most sensibly read, in light of the ADA's overarching deregulatory purpose, to mean 'States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier.'" *Id.* at 229 n. 5, 115 S.Ct. 817.

### 4. The Circuit Split

Whether a wrongful discharge claim based on allegations that an airline or an airline servicer retaliated against a whistleblower falls within the preemption of the ADA has not been conclusively decided by the Second Circuit. However, several other circuit courts, namely the Third, Eighth, Ninth, and Eleventh circuits, have addressed the issue explicitly, although they have reached divergent conclusions.

In *Botz v. Omni Air Int'l*, 286 F.3d 488 (8th Cir.2002), a flight attendant initiated an action in Minnesota state court pursuant to the state's whistleblower statute, alleging that she was discharged in retaliation for refusing a flight assignment that she believed violated federal safety regulations. The defendant moved to dismiss the action, arguing that the state whistleblower provisions were both expressly and impliedly preempted by the ADA. The district court granted the motion to dismiss, which the Court of Appeals affirmed.

The Eighth Circuit first discussed the phrases "related to" and "a price, route, or service of an air carrier" within the context of the ADA's express preemption provision, and found from this plain language that the provision had a broad preemptive effect. The court also found the Supreme Court's decision in *Morales* to support the expansive scope of the preemption provision. Thus, when viewing the facts surrounding Botz's discharge, the Eighth Circuit found the Minnesota whistleblower statute to have a "forbidden connection with air-carrier services". *Id.* at 494. This forbidden connection stemmed almost exclusively from the fact that the state law at issue included broad authorization for flight attendants to refuse flight assignments, and thus the court found that this jeopardized an air carrier's ability to complete its scheduled flights. Furthermore, the Eighth Circuit found support in the WPP, because according to the court, its protections illustrated the types of claims Congress intended the ADA to preempt. *Id.* at 497 ("In fashioning a single, uniform standard for dealing with employee complaints of air-safety violations, Congress furthered its goal of ensuring that the price, availability, and efficiency of air transportation rely primarily upon market forces and competition rather than allowing them to be determined by fragmented and inconsistent state regulation."). The

court did not address implied preemption, because it concluded that the ordinary meaning of the language of the ADA's preemption provision adequately demonstrated Congress's intent to preempt the plaintiff's claims under the state whistleblower statute. *See Botz*, 286 F.3d at 495.

However, the *Botz* case has been criticized and its reasoning rejected by the three other circuits to have faced this precise issue. *See, e.g., Gary v. Air Group*, 397 F.3d 183 (3d Cir.2005) ("We therefore agree with the Eleventh Circuit that *Botz* went too far in expanding ADA preemption"); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir.2003) (noting that the *Botz* decision "improperly conflates the employee's on-the-job decisions and activities with the state law retaliation claim. An employee's decision to refuse an assignment or ground a plane is a judgment call made in light of the surrounding circumstances and in the course of carrying out the duties for which he or she is employed. State law whistleblower and wrongful discharge claims do not compel the employee to act in one way or another"). The Eleventh, Third, and Ninth Circuits have found that there is no preemption by the ADA in similar circumstances to the present case.

In *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248 (11th Cir.2003), an aircraft inspector reported several safety violations to the FAA related to the adequacy of certain airline parts which he had inspected. He brought suit pursuant to Florida's whistleblower statute and the defendant argued preemption. The Eleventh Circuit began by exploring the contours of the phrase "related to" and "services" in the ADA's preemption provision. The court construed the term "services" expansively, in agreement with the Fifth Circuit, and defined it to encompass aspects of air carrier operations beyond the literal transpor-

tation of passengers, but still limited to the bargained-for aspects of airline operations over which carriers compete. Therefore, it found that the Plaintiff's claim regarding the safety of certain airline parts did not relate to "airline services" because it did not significantly affect any bargained-for element of air carrier operations. However, even under a narrower definition, the court concluded that Branche's claim did not relate in any meaningful way to "airline services" because it did not relate to the transportation of passengers from one location to another. The court categorized Branche's retaliation claim for post hoc reporting of safety violations as more akin to a general employment discrimination action. Thus, the court found that a claim based on the Florida whistleblower statute was not preempted because retaliation claims, like discrimination claims, do not affect or implicate a service regarding which airlines compete for businesses.

In *Gary v. Air Group, Inc.*, 397 F.3d 183 (3d Cir.2005), an aircraft employee complained to his supervisor that another employee was unqualified to pilot an aircraft. After he was subsequently terminated in alleged retaliation, the employee sued in state court pursuant to New Jersey's whistleblower statute. The Third Circuit reversed the district court's finding of preemption. First, it found that under any definition of "service", Gary's complaint to his supervisors was too remote and too attenuated to fall within the scope of the ADA, in part because he "never refused a work assignment … and did not have the potential to interrupt service by grounding a particular flight." *Id.* at 189. His actions were "more properly viewed as comparable to a garden variety employment claim, albeit in the present context, one that is related to safety." *Id.* Thus, his complaint and the actions allegedly taken by him could not be deemed to be related to the "service of an air carrier", particu-

larly in light of the ADA's primarily economic focus.

Finally, in *Ventress v. Japan Airlines*, 603 F.3d 676 (9th Cir.2010), the Ninth Circuit joined the reasoning of the Eleventh and Third Circuits. The case involved a flight engineer and commercial pilot who had reported a safety violation after it occurred—that the defendant had required a seriously ill pilot to fly. They subsequently brought a claim for wrongful retaliation, alleging violations of California's whistleblower statute. The court was mindful that Congress does not "cavalierly preempt state-law causes of action", particularly in the area of employment law which falls within the traditional police power of the State. *Id.* at 682. It then adopted a relatively narrow definition of airline "services", essentially limiting it to the prices, schedules, origins and destinations of point-to-point transportation. The court concluded that the Plaintiffs' reporting of safety violations six months after they occurred and after completion of scheduled flights did not interrupt "service" (at least under the Circuit's narrow definition), and therefore the ADA did not preempt whistle blower claims filed pursuant to California law.

### 5. Arguments For and Against Preemption

In the motion at issue, the Plaintiff argues that remand is appropriate because New York Labor Law § 740 is not preempted by the ADA and therefore there is no federal question raised by his complaint. He urges this Court to follow the reasoning of *Branche, Gary,* and *Ventress,* and contends that the relationship between his claim and the prices, routes, and/or services of the entities serviced by AAR is tenuous at best. In particular, Ulysse argues that even if he were to prevail in his suit against AAR, "it is un-

clear how this would impact the prices, routes and services of AAR's clientele, with the possible exception of their retention of a new provided for aircraft maintenance." (Pl. Mot. at 4.) In addition, the Plaintiff urges the Court to not lightly infer preemption because employment standards are within the traditional police power of the state.

On the other hand, the Defendants argue that the Plaintiff's whistleblower claim relates to the "service" element of the ADA's express preemption provision and that this Court should follow the logic of *Botz*. The Defendants cite to several cases which have found that the maintenance of jet bridges and aircraft generators sufficiently related to "service" in the context of preemption, and contends that the Plaintiff's complaints concerning the proper maintenance of airplanes likewise implicates air services. In addition, the Defendants argue that implied preemption must be found and thus remand is alternatively improper on this basis.

6. **Express Preemption: Whether the New York Labor Law Claim is "Related to a Price, Route, or Service of an Air Carrier" Within the Express Terms of the ADA Preemption Provision**

 a. **As to the Definition of "Related To"**

The first issue that must be addressed is whether the Plaintiff's state labor law claim is "related to a price, route, or service of an air carrier" so as to fall within the ADA's express preemption provision. Thus, the Court must determine the import of the phrase "related to". As set forth above, this key language ordinarily has a broad meaning and thereby expresses a "broad pre-emptive purpose." *Morales*, 504 U.S. at 383, 112 S.Ct. 2031 (describing the language as "deliberately expansive" and "conspicuous for its breadth"). "[T]he Supreme Court has repeatedly emphasized the breadth of the ADA's preemption provision." *Air Transp. Ass'n of Am. v. Cuomo* ("ATAA"), 520 F.3d 218, 222 (2d Cir.2008) (citing *Am. Airlines v. Wolens*, 513 U.S. 219, 225–26, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995); *id.* at 235 (Stevens, J. concurring in part and dissenting in part); *Morales*, 504 U.S. at 383–84, 112 S.Ct. 2031; *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 128 S.Ct. 989, 998, 169 L.Ed.2d 933 (2008)).

■ The New York State labor law at issue does not itself expressly refer to the rates, routes, or services of air carriers. In fact, Section 740 does not reference the airline industry whatsoever. However, that alone is not determinative. The Supreme Court has articulated that "related to" in the context of the ADA means that state enforcement actions need only have a connection with or reference to airline "rates, routes, or services" to be preempted. *See Morales*, 504 U.S. at 384, 112 S.Ct. 2031. In other words, the state statute can either expressly reference the air carrier's prices, routes or services or merely have a "forbidden significant effect" upon the same. *Id.* at 388, 112 S.Ct. 2031.

Thus, it is irrelevant that Section 740 is one of general applicability because such state laws are routinely preempted when they merely concern the price, routes and services of an air carrier. *See Wolens*, 513 U.S. 219, 115 S.Ct. 817 (1995) (finding preempted state law claims brought under an Illinois Consumer Fraud Act); *In re JetBlue Airways Corp. Privacy Litig.*, 379 F.Supp.2d 299, 315 (E.D.N.Y.2005) (stating that "[f]or a claim to be preempted ... the underlying state law need not expressly refer to air carrier rates, routes or services" and finding preemption under the

ADA claims brought under forty-nine state statutes prohibiting unfair and deceptive acts and practices).

### b. As to the Definition of "Services"

Accordingly, the crucial determination comes down to whether the Plaintiff's claims have a connection to or a forbidden significant effect upon airlines "rates, routes, or services." Neither party here disputes that the only relevant concept here is that of "services", as opposed to "rates" or "routes".

The ADA does not define the term "service", nor has the Supreme Court interpreted it. "While some variation has arisen among the courts regarding the definition of the term 'services' under the ADA, every court attempting to define the term has included point-to-point transportation within its definition as a bargained-for aspect of air travel." *Miller v. Raytheon Aircraft Co.*, 229 S.W.3d 358, 372–73 (Tex.App.2007) (citing *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir.2003) (adopting the Fifth Circuit definition of services, which includes transportation itself); *Duncan v. Nw. Airlines, Inc.*, 208 F.3d 1112, 1114–15 (9th Cir.2000) (holding that service refers to provision of air transportation to and from various markets at various times), cert. denied, 531 U.S. 1058, 121 S.Ct. 650, 148 L.Ed.2d 571 (2000) (O'Connor, J., dissenting) (noting various definitions of the term "services" under ADA and the need to resolve this conflict between circuit courts); *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir.1998) (defining services to include point-to-point transportation of passengers, cargo, or mail); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir.1996) (defining services to include transportation itself); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (defining services to include

transportation itself); *Delta Air Lines, Inc. v. Black*, 116 S.W.3d 745, 752 (Tex. 2003) (citing service definitions from *Hodges* and *Charas* )).

Although the Second Circuit has yet to precisely define the term "services" as used in the ADA, the court has clearly indicated that it is broader than such point-to-point transportation, as limited by the Third and Ninth Circuits, and thus extends beyond prices, schedules, origins, and destinations. For instance, in 2008, the Second Circuit explicitly refused to define the term "services" in this context but had little difficulty concluding that requiring airlines to provide food, water, electricity, and restrooms to passengers during lengthy ground delays related to the "services" of an air carrier. *See ATAA*, 520 F.3d at 224 ("Onboard amenities, regardless of whether they are luxuries or necessities, still relate to airline service").

Moreover, a broad interpretation of the term "services" is appropriate for several reasons. First, there is a lack of textual justification for a more truncated reading. *See* Webster's Third New International Dictionary 2075 (3d ed. 1961) (listing an extremely broad definition of "service": "a useful labor that does not produce a tangible commodity"); *Branche*, 342 F.3d at 1257 ("there is nothing in the text of § 41713 [of the ADA] indicating that Congress intended to deviate from this standard definition."). Second, as stated above in the context of relevant Supreme Court precedent, the preemption clause in the ADA should be afforded an extremely broad scope. Third, this Court does not have a concern that a broad reading of "services" would result in the preemption of "virtually everything an airline does", which is a concern expressed by Circuits that employ a narrower definition. *See Charas*, 160 F.3d at 1266.

■ For these reasons, this Court will adopt a broad definition of "services" under the ADA and now construes the term to include not only the physical transportation of passengers, but other possible incidents of transportation, in accordance with the majority of this Court's sister circuits and the apparent indication in the Second Circuit precedents.

■ However, a recent case rendered by the Second Circuit has also indicated that the definition of "services" as utilized in the ADA is not without limit. In *Goodspeed Airport, LLC v. East Haddam Inland Wetlands and Watercourses Commission*, 634 F.3d 206 (2d Cir.2011), the court held that "the ADA does not preempt applicable state and local environmental and land use statutes and regulations that impose permit requirements whose impact on air carriers, if any, is remote." *Id.* at 212. The court acknowledged that there may be instances in which an indirect impact on air carriers is not preempted when the state action has a "tenuous, remote, or peripheral" effect on air services. *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 390, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)).

■ Therefore, this Court finds that some limitation on the definition of "services" is appropriate. One such constraint which this Court now imposes is that "services" is limited to the bargained-for aspects of airline operations over which carriers compete. "[T]he purpose of the ADA's preemption provision is to increase reliance on competitive market forces rather than pervasive federal regulation ... plainly this purpose is not served by interpreting the term 'services' to include those aspects of airline operations that are not bargained-for by carriers and their passengers." *Branche*, 342 F.3d at 1258. Put another way, elements of air carrier operations over which airlines do not compete are not "services" within the meaning of ADA's preemption provision, so that state laws related to these elements are not preempted. *Accord id.* at 1257 ("Accordingly, we readily conclude that even if "services" ... is construed to encompass aspects of air carrier operations beyond the transportation of passengers—i.e., the trappings and incidents of that transportation like on-board food and beverage services, ticketing and the like—its definition is nonetheless still limited to the *bargained-for* aspects of airline operations over which carriers compete.") (emphasis in original); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir.1995) (" 'Services' generally represent a bargained-for or anticipated provision of labor from one party to another.").

This conclusion seems especially justified in light of the Second Circuit's citing to *Rowe* with approval, by stating that "[t]he [*Rowe*] Court emphasized that Congress's 'overarching goal' with regard to the ADA was helping to assure that transportation rates, routes, and services 'reflect[ed] maximum reliance on competitive market forces,' thereby stimulating not only 'efficiency, innovation, and low prices,' but also 'variety' and 'quality' in transportation services." *ATAA*, 520 F.3d at 222–23.

In sum, the Court's inquiry as to whether the claim at issue is preempted by the express preemption provision of the ADA turns on whether it is related to the services of an air carrier, meaning it has a connection with or a forbidden effect upon the elements of air travel that are bargained for by passengers with air carriers.

### c. Whether the Plaintiff's Claim Relates to the "Services" of an Air Carrier

■ The Court finds that the Plaintiff's claim is not related to services of an

air carrier so that it does not fall within the express preemption provision of the ADA.

First, even assuming that the Plaintiff's whistleblower claim is mainly considered as concerning airline safety, as opposed to a pure workplace retaliation claim, safety is not the type of bargained-for service that would fall under the definition of "services" pursuant to the ADA which this Court has now adopted. In a case with nearly identical facts—an alleged retaliation for an employee's complaints regarding the safety of certain aircraft parts—the Eleventh Circuit found that "safety is not a basis on which airlines compete for passengers, and as such is not something for which air travelers bargain; it is implicit in every ticket sold by every carrier." *Branche*, 342 F.3d at 1260. The Court agrees with this logic, and thus finds that under the facts in the present case, it "does not serve the purposes of the ADA to preempt state law employment claims related to safety." *Id.; see also Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d Cir.1999) ("Safe operations ... are a necessity for all airlines. Whether or not to conform to safety standards is not an option for airlines in choosing a mode of competition. For this reason, safety of an airline's operations would not appear to fall within the ambit of the ADA and its procompetition pre-emption clause."). Of course, this is not to say that this would be the case with every safety-related claim because there may be instances that are sufficiently related to air carrier services. However, "the very fact that they concern safety, standing alone, is insufficient to demonstrate this nexus." *Branche*, 342 F.3d at 1260.

Second, the one circuit court to have found preemption in the context of a state whistleblower claim upon which the Defendants rely, did so largely because the employee's actions in refusing to take certain flights as a flight attendant actually affected air craft services. Her actions had the result of grounding certain flights, thereby literally disrupting service to an airline's passengers. *See generally Botz*, 286 F.3d 488 (8th Cir.2002). The Plaintiff's Complaint in the present case—relating to the suitability of certain aircraft replacement parts—would not necessarily result in the disruption of flight services. There is no indication for the Court to conclude that there were any delays resulting from the Plaintiff's complaints to supervisors that affected air services, or even that the Plaintiff refused to fix certain plane parts which could, in theory, affect air services. *Cf. Hanold v. Raytheon Co.*, 662 F.Supp.2d 793, 804 (S.D.Tex.2009) (finding preemption for a claim relating to the repeated refusal to falsify maintenance discrepancy logs at the insistence of his superiors, but only because of the plaintiff's admission that the delays resulting from making entries into the maintenance records affected air services); *see Gary*, 397 F.3d at 189 (finding no express preemption because "Gary's actions did not interrupt any scheduled flights, nor did they have the potential to ground any scheduled flights, for the simple reason that no flights were scheduled").

Furthermore, unlike in *Botz*, New York's whistleblower statute does not permit an employee to refuse to perform an action that he believes to be in violation of federal or state regulations. Rather, Section 740 simply protects an employee from retaliation by an employer for reporting actual or possible ·violations of federal or state law to his/her supervisor and/or appropriate government official. Thus, an employee is not permitted to disrupt the services of his/her employer but is merely protected for reporting a violation. *Accord Schumacher v. Amalgamated Leasing, Inc.*, 156 Ohio App.3d 393, 806 N.E.2d

189 (3rd Dist.2004) (finding no preemption by ADA of Ohio state whistleblower law under this same rationale).

In addition, it appears from the allegations in the Complaint that the Plaintiff engaged in only the post hoc reporting of a possible safety violation, and the Defendants do not indicate otherwise in their papers. *See Branche*, 342 F.3d at 1262–63 (finding that a report of a safety violation after the fact would possibly involve an investigation into the airline's practices but would not ground an airplane). This is true despite the Plaintiff's acknowledgment in his Complaint that his worry with the use of substandard parts was that it had the *potential* "to interfere with a [plane's] ability to operate."

The possibility of an effect on aircraft services seems even more remote under the facts of this case as opposed to others, because Ulysse is not himself an employee of the airlines and thus does not provide services directly to consumers. Rather, his role is more attenuated in that AAR merely contracts with airline companies to do repair work on their planes. It is hard to imagine how a third-party repair servicer could have the same impact on the services of an airline as, for example, a flight attendant or a baggage carrier, who is a direct employee of the airlines. *See Jimenez–Ruiz v. Spirit Airlines, Inc.*, 794 F.Supp.2d 344, 348 (D.P.R.2011) ("The court notes that the instances in which claims have been preempted because they relate to "services" mostly involved "*services provided by individual airline employees directly to passengers*, such as ticketing, boarding, in-flight service, and the like."). *But see Marlow v. AMR Servs. Corp.*, 870 F.Supp. 295 (D.Haw. 1994) (finding that worker for jet bridge maintenance company had claims that were not too peripheral, and thus had the necessary "connection with or reference to" air carrier service to result in ADA preemption of his state whistleblower claims); *Tucker v. Hamilton Sundstrand Corp., Inc.*, 268 F.Supp.2d 1360 (S.D.Fla. 2003) (finding that aircraft generator maintenance is sufficiently related to air carrier service that the plaintiff's claims were preempted).

Moreover, the Court is doubtful that the whistleblower claim at issue is even related to airline services at all, and finds instead that it is more properly considered as simply a species of employment retaliation. The Second Circuit has plainly held that discrimination claims are not preempted by the ADA. For example, in *Abdu–Brisson v. Delta Airlines*, 128 F.3d 77, 83 (2d Cir.1997), the Second Circuit determined that an age discrimination suit brought by airline pilots under New York law was not preempted by the ADA. It found that it would have been too attenuated with regard to an impact on air carrier prices and services and was too far removed from the field of air carrier competitiveness and efficiency to be within the scope of ADA preemption. *Id.* at 84–85.

In *Sakellaridis v. Polar Air Cargo, Inc.*, 104 F.Supp.2d 160, 163 (E.D.N.Y.2000), the court found that "[t]he purpose of the ADA is airline deregulation permitting more effective competition" and that "[e]nforcing state labor law provisions allowing injured contractors' workers to bring personal injury claims against airlines would have no significant effect on airline deregulation". Similarly here, enforcing state labor law provisions which allow workers to bring retaliation claims against private airline replacement companies would have no significant effect on airline deregulation. While the reason for the retaliation here—complaints regarding the safety of certain replacement parts—may have some peripheral effect on the costs of operation and implicitly on airline fares, the

crux of the cause of action is for workplace retaliation and therefore does not warrant preemption.

Finally, the Court notes that resolution of the Plaintiff's Labor Law claim will likely have no impact on airline services whatsoever. Section 740 only allows recovery of compensatory damages by an aggrieved employee, and provides for injunctive relief to restrain continued violation, reinstatement of the aggrieved employee, and reinstatement of the aggrieved employee's fringe benefits and seniority rights (see, Labor Law § 740(5)). The law does not impose new safety standards or require that the facility cease or alter its operations in any way after a complaint regarding safety is made. "All that Section 740 does is prohibit [AAR] from punishing plaintiff for reporting safety violations. Clearly such a tangential relationship does not constitute direct regulation." *Bordell v. Gen. Elec. Co.*, 164 A.D.2d 497, 500, 564 N.Y.S.2d 802 (3rd Dep't 1990); *See Meyer v. United Airlines, Inc.*, 624 F.Supp.2d 923, 932 (N.D.Ill.2008) ("The focus of the trial would be on whether United retaliated against him for that work.... The result that he is seeking, re-employment or damages for his discharge, do not directly relate to the manner in which United services its planes nor would that result have an impact on United other than in a remote and peripheral way.").

In sum, this Court now follows the reasoning of the Eleventh, Third, and Ninth Circuits and declines to follow the logic of the Eighth Circuit with regard to the issue of ADA's express preemption of state whistleblower claims. "[A]t its root, this case involves a simple employment discrimination claim, with the prohibited basis for termination being not any inherent characteristic of the employee such as race, gender or disability, but rather his undertaking of protected activity." *Branche*, 342 F.3d at 1259. The Court finds that Ulysse's claims are based on retaliation that occurred after, and is logically separate from, the on-the-job conduct that he complained of. The retaliation that is prohibited by state law "does not impact prices, routes, or services and does not trigger preemption under [the ADA]." *Fadaie v. Alaska Airlines, Inc.*, 293 F.Supp.2d 1210, 1216 (W.D.Wash.2003).

### 7. Implied Preemption

Although the Court does not find that the express preemption provision of the ADA precludes the instant whistleblower case from being remanded to state court, it must still address whether implied preemption is present so that remand would be improper.

 In general, the existence of an express preemption provision means that implied preemption is not present. *See Freightliner Corp. v. Myrick*, 514 U.S. 280, 289, 115 S.Ct. 1483, 131 L.Ed.2d 385 (1995); *Horn v. Thoratec Corp.*, 376 F.3d 163, 166 (3d Cir.2004). However, despite this general rule, that is not always the case. *See Freightliner*, 514 U.S. at 289, 115 S.Ct. 1483 (noting that the existence of an explicit preemption provision "does not mean that the express clause entirely forecloses any possibility of implied pre-emption"); *Gary*, 397 F.3d at 190 n. 7 ("With respect to conflict preemption, the Supreme Court has left open the possibility that a federal law could provide for both express and conflict preemption ... [although] courts of appeals in general have been extremely reluctant to infer conflict preemption in the face of an express preemption provision."). Thus, in spite of the express preemption provision of the ADA, the Court must nevertheless determine

whether implied preemption may be appropriate under these circumstances.

Implied preemption is particularly relevant in this case, as the Second Circuit has noted that "the intent to centralize air safety authority and the comprehensiveness of these regulations pursuant to that authority have led several other circuits (and several courts within this Circuit) to conclude that Congress intended to occupy the entire field and thereby preempt state regulation of air safety." *ATAA*, 520 F.3d at 225. *See, e.g., U.S. Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010); *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir.2007) ("[T]he FAA preempts the entire field of aviation safety through implied field preemption. The FAA and regulations promulgated pursuant to it establish complete and thorough safety standards for air travel, which are not subject to supplementation by … state laws."); *Greene v. B.F. Goodrich Avionics Sys., Inc.*, 409 F.3d 784, 795 (6th Cir.2005), cert. denied, 547 U.S. 1003, 126 S.Ct. 1465, 164 L.Ed.2d 247 (2006); *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 367–68 (3d Cir.1999); *French v. Pan Am Express, Inc.*, 869 F.2d 1, 5 (1st Cir.1989); *Curtin v. Port Auth. of N.Y. & N.J.*, 183 F.Supp.2d 664, 671 (S.D.N.Y.2002). The *ATAA* Court stopped short of formally holding that Congress intended to occupy the field of air safety. However, in *Goodspeed*, the Second Circuit explicitly held that it was going to follow the logic of other circuits and concluded that the FAA does preempt the field of airline safety. *See Goodspeed*, 634 F.3d at 210 ("Today we join our sister circuits.").

Nevertheless, this does not end this Court's inquiry. *See id.* ("concluding that Congress intended to occupy the field of air safety does not end our task."). While there is a clear congressional intent to preempt air safety, this Court's task is to now determine the scope of that preemption and decide whether the state whistleblower law at issue here falls within its confines. " 'The key question is thus at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted.' " *Id.* at 211 (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)).

As in *Goodspeed*, this Court concludes that "although Congress intended to occupy the entire field of air safety, the state laws at issue here do not interfere with federal laws and regulations sufficiently to fall within the scope of the preempted field." *Id.* A state's protection for whistleblowers against retaliation in the workplace is not an intrusion of state authority on the preempted field of air safety. The New York whistleblower statute is a labor law that does not refer to aviation or airports. *See id.* ("Moreover, IWWA and CEPA are environmental laws that do not refer to aviation or airports."). It is also not limited to retaliation in a particular field of employment, and thus would apply equally to those employed by aircraft servicers, fast food chains, or even the state court system. The statute, while providing protection for those who may conceivably raise concerns about flight dangers, does not itself prohibit, allow, or otherwise regulate any incident of airline safety. Moreover, the state statute itself does not protect the reporting of a violation of only federal law, but rather "any duly enacted statute or ordinance or any rule or regulation promulgated pursuant to any federal, state or local statute or ordinance." The language is simply too broad, and the scope is too general and universal, for this Court to find that it intrudes on the preempted field of air safety.

The Defendants could argue that the actual act of whistleblowing in the circum-

stances of this case may have an impermissible effect of causing an investigation of or changes to the adequacy of certain airline replacement parts. "[P]art of the preempted field is defined by reference to the purpose of the state law in question . . . another part of the field is defined by the state law's actual effect[.]" *English v. Gen. Elec. Co.*, 496 U.S. 72, 84, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). However, the Court finds that the state law at issue here does not enter the scope of the preempted field in either its purpose or its effect.

In order to maintain an action under Section 740, Ulysse would undisputedly be required to "establish a violation of a law, rule or regulation, which violation must be actual and not merely possible, and (2) demonstrate that the lack of compliance presents a substantial and specific danger to the public health or safety." *See Frank v. Walgreens Co.*, No. 09 Civ. 955, 2011 WL 4465210, at *4 (E.D.N.Y. Sept. 26, 2011); *see also Bordell v. General Elec. Co.*, 88 N.Y.2d 869, 644 N.Y.S.2d 912, 667 N.E.2d 922 (1996) (finding that an aggrieved employee must demonstrate an actual violation of a statute or regulation; mere suspicion or even a good-faith or reasonable belief on the part of the employee is insufficient). Thus, in order to succeed on his claim, Ulysse would necessarily have to demonstrate that certain acts in violation of federal safety regulations took place.

▇▇ However, the purpose of Section 740 is not to actually impact or somehow regulate the concerns that are raised under its protections. Its direct purpose is to protect the whistleblower that makes a complaint relating to such, and thereby indirectly encourages these complaints to be made. *See Kramsky v. Chetrit Group LLC*, No. 10 Civ. 2638, 2010 WL 4628299, at *4 (S.D.N.Y. Nov. 16, 2010) ("protecting

health and safety whistleblowing by employees . . . is the statute's ultimate purpose"); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 271 (S.D.N.Y. 2001) ("Although the Whistleblower Act has a limited scope—only protecting the disclosure of unlawful practices which present a substantial and specific danger to the public health or safety—it *does* protect, and intends to *encourage*, employee disclosures that fall within it.").

Of course, the promotion of enforcement of the law is one of the goals of Section 740, as is the general protection of the public welfare. *See* Executive Memorandum, S. 10074 (N.Y. 1984) ("Encouraging employees to bring violations to the attention of their employers and shielding them from employer retaliation if they disclose wrongful conduct to authorities, will protect the welfare of the people of this State, promote enforcement of the law, and give needed protection to employees who wish to act as law-abiding citizens without fear of losing their jobs."); Attorney General's Memorandum, S. 10074 (N.Y. 1984) ("By encouraging employees to bring violations to the attention of their employers and by shielding them from dismissal if they disclose wrongful conduct to authorities, this bill will protect the welfare of the people of this state [and] promote enforcement of the law"). However, the general public policy goals underlying the whistleblower statute do not provide a sufficiently direct intrusion upon the safety regulations concerning air travel. The state is not intending to prescribe standards of airline safety—only to bring certain conduct to light to provide protection for employees who do so.

▇▇ This conclusion is buttressed by the fact that "[r]elief available under the Act . . . is limited to specifically-defined statutory remedies. A plaintiff who sues under the Act may only seek an injunction

against further retaliation, reinstatement of employment with full benefits, compensation for lost wages, and attorneys' fees." *Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 268 (S.D.N.Y.2001). Accordingly, while the violation of certain federal regulations is a prerequisite of recovery under the statute, the actual remedy under the Section 740 is strictly related to the whistleblower's employment—not any remedy of the safety violations that were complained about.

While there are certainly broader public policy goals at play which underlied the enactment of Section 740, in the context of actual civil litigation, the Plaintiff's case is purely a garden variety employment case. "[A]t its root, this case involves a simple employment discrimination claim, with the prohibited basis for termination being not any inherent characteristic of the employee such as race, gender or disability, but rather his undertaking of protected activity." *Branche*, 342 F.3d at 1259; *see Gary*, 397 F.3d at 189 ("Instead, [his] actions are more properly viewed as comparable to a garden variety employment claim, albeit in the present context, one that is related to safety.").

The Court agrees that "employment discrimination actions typically have been held to fall outside the scope of the ADA's preemption clause." *Branche*, 342 F.3d at 1259 (citations omitted). Thus, given that the Plaintiff's claim is that he was discharged for his post hoc reporting of AAR's safety violations, the Court believes that this case is more analogous to the majority of those employment discrimination claims. *See Abdu–Brisson v. Delta Airlines, Inc.*, 128 F.3d 77, 84 (2d Cir. 1997) ("Permitting full operation of New York's age discrimination law will not affect competition between airlines—the primary concern underlying the ADA ....whether an airline discriminates on

the basis of age (or race or sex) has little or nothing to do with competition or efficiency."); *see Sakellaridis v. Polar Air Cargo*, 104 F.Supp.2d 160, 163 (E.D.N.Y. 2000) ("Enforcing state labor law provisions allowing injured contractors' workers to bring personal injury claims against airlines would have no significant effect on airline deregulation.").

Lastly, this Court's conclusion is supported by the notion that employment standards fall squarely within the traditional police powers of the states, and as such should not be disturbed lightly. *See Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252, 114 S.Ct. 2239, 2243, 129 L.Ed.2d 203 (1994) ("Pre-emption of employment standards 'within the traditional police power of the State' 'should not be lightly inferred.'" (quoting *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 21, 107 S.Ct. 2211, 2222, 96 L.Ed.2d 1 (1987))).

### 8. As to the WPP

As the final consideration with regard to preemption, the Court must determine whether the amendments enacted by the WPP have changed any of its above analysis, either with regard to express or implied preemption. As stated above, the WPP essentially provides a federal cause of action for whistleblowing with regard to airline related safety violations. The Defendants argue that the WPP supports the notion that either express or implied preemption by the ADA exists. *See Botz*, 286 F.3d at 497 (finding support for preemption from the WPP because with the WPP's enactment, Congress sought to impose a "more predictable response to public air-safety complaints ... than would likely be possible if it had granted review in the courts of the fifty States."). In addition, in the context of the Defendants' cross-motion to dismiss, the Defendants argue that the WPP implicitly forecloses

any state whistleblower claims, so that the Plaintiff's exclusive remedy is under the WPP and is therefore untimely.

The WPP represents a federal analog to New York's whistleblower statute. However, the procedures described in the two laws are completely different. For example, under the WPP, a plaintiff cannot directly file a civil action against his employer, but must instead file a complaint with the Secretary of Labor. *See* 49 U.S.C. § 42112(b)(1). Then, the Secretary assesses the merits of the complaint and can either find it to be without merit and deny it, or, if it finds it to be meritorious, can order the abatement of the violation, reinstatement with back pay and/or compensatory damages. *See* 49 U.S.C. § 42121(a)(2) and (3). Thereafter, any party that is aggrieved by the Secretary's order may obtain review of that order in the appropriate circuit court of appeals. By contrast, under Section 740, Plaintiffs are not "required to negotiate these administrative obstacles to the adjudication of their claim in a judicial forum." *Branche*, 342 F.3d at 1261 n. 8. *See* § 740(4)(a) ("An employee who has been the subject of a retaliatory personnel action in violation of this section may institute a civil action in a court of competent jurisdiction for relief as set forth in subdivision five of this section within one year after the alleged retaliatory personnel action was taken."). The fact that such varying procedures underlie the two acts lends credence to the notion that enactment of one would not necessarily have the intent to displace the other.

In addition, the WPP "says nothing whatsoever about preemption, which is an omission susceptible to more than one interpretation." *Branche*, 342 F.3d at 1263; *Gary*, 397 F.3d at 183 ("the plain language of the WPP is wholly silent on the issue of preemption"). In fact, no one disputes that the WPP does not expressly expand the preemptive scope of the ADA. While one could certainly argue, as the Defendants do, that this silence means that preemption is appropriate, it seems equally compelling that Congress was demonstrating its acquiescence in the view that state whistleblower claims are not preempted, as the majority of courts to consider the issue have concluded. *See Gary*, 397 F.3d at 183 ("Congress' silence renders its intent "ambiguous" at best and thus should not serve as a basis for expanding ADA preemption.").

█ The addition of a federal law remedy for whistleblowing has been found by a few district courts to completely preempt a corresponding state whistleblower claim because of the belief that the WPP provides an exclusive remedy. *See Wright v. Nordam Group, Inc.*, No. 07 Civ. 699, 2008 WL 802986, at *3 (N.D.Okla. Mar. 20, 2008) (finding that WPP provides a replacement cause of action for state law claims concerning alleged violations of federal air-safety regulations) and *Turgeau v. The NORDAM Group, Inc.*, No. 02 Civ. 965, Dkt. No. 15, at 5–11 (N.D. Okla. April 8, 2003) (same). However, this Court declines to infer from the very enactment of a federal remedy that Congress also intended to preempt all remotely equivalent state law causes of action. There are a number of substantive areas in which parallel state and federal remedies exist. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496–97, 116 S.Ct. 2240, 2256, 135 L.Ed.2d 700 (1996) (holding that a federal statutory remedy did not pre-empt "substantively identical" state law remedies for precisely the same conduct and harm); *Branche*, 342 F.3d at 1264 ("the very enactment of a federal remedy, without more, cannot cause us to expand the scope of an express pre-emption provision to encompass and pre-empt *all* equivalent state remedies.").

■ Thus, the Court now finds that the WPP does not alter the scope of the ADA preemption provision so that the Court's conclusion should be altered in any way. *See Gary,* 397 F.3d at 189–90 (finding that WPP did not broaden preemption under the ADA); *Branche,* 342 F.3d at 1263 (refusing to expand preemption under the ADA to include state whistleblower laws because the WPP's silence inferred that Congress did not intend to preempt such claims); *Meyer v. United Airlines, Inc.,* 2009 WL 367762, at *5 (N.D.Ill. Feb. 15, 2009) ("This Court finds that ADA's WPP provision does not preempt all state law retaliatory discharge claims that relate to air safety ... Therefore, this Court adopts an interpretation of the WPP that remains true to the text of ADA: a cause of action under the WPP preempts a state retaliatory discharge cause of action [only] when the claim relates to airline prices, routes, or services."); *Fadaie,* 293 F.Supp.2d at 1216–17 ("WPP added an additional remedy for aggrieved works but did not expand scope of preemption under [the ADA]").

The relevant question remains whether Section 740 is related to air carrier services, which the Court finds it is not. *See Branche,* 342 F.3d at 1264 ("Because the WPP says nothing about pre-emption, it leaves us in precisely the same position as we occupied before considering this statute ... the WPP did not render these claims any more related to the bargained-for aspects of air carrier operations over which the airlines compete."); *Ventress,* 603 F.3d at 683 ("the WPP did not alter ADA preemption and [thus] the operative question remains whether the state law claim is related to airline prices, routes, or services.").

Therefore, after surveying the case law on federal preemption generally and specifically in relation to the ADA, this Court finds that complete federal preemption does not exist in this dispute and accordingly, there is no federal question, so that remand on this ground is appropriate.

## C. As to Whether Completely Diversity Exists

In addition to the federal question issue discussed above in the context of preemption, the Defendants assert that remand is also improper because complete diversity exists as between all of the parties to this action. Although the notice of removal concedes that the three individual Defendants are New York residents as is the Plaintiff, the Defendants argue that these individuals were fraudulently joined by the Plaintiff to defeat diversity jurisdiction and therefore their citizenship should not be considered by this Court. In support of their fraudulent joinder argument, the Defendants contend that based upon the pleadings, no possibility exists that the Plaintiff can state a cause of action against the non-diverse individual Defendants in state court.

On the other hand, the Plaintiff argues that the Defendants fail to meet their burden to demonstrate that complete diversity exists as to all parties. In particular, the Plaintiff notes that Section 740 does not prohibit a cause of action against the individuals involved in the alleged retaliatory acts against the Plaintiff and therefore they are proper Defendants.

### 1. Relevant Law

■ It is "axiomatic ... that diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships." *Herrick Co., Inc. v. SCS Commns., Inc.,* 251 F.3d 315, 322 (2d Cir.2001) (citing *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978)); *accord Willis v. Westin Hotel Co.,* 651

F.Supp. 598, 601 (S.D.N.Y.1986) ("Complete diversity is a state of affairs where all plaintiffs are citizens of different states from all defendants.").

A party that is seeking to remove a plaintiff's suit to federal court bears "the burden of establishing that the requirements for diversity jurisdiction were met." *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir.2000); *Crazy Eddie, Inc. v. Cotter*, 666 F.Supp. 503, 508 (S.D.N.Y.1987) (same); 14B Wright & Miller § 3702 at 49. "While this standard requires a defendant to apply a reasonable amount of intelligence in ascertaining removability, it does not require a defendant to look beyond the initial pleading for facts giving rise to removability." *Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 37 (2d Cir.2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 205–06 (2d Cir.2001); *see Foster v. Mutual Fire, Marine & Inland Ins. Co.*, 986 F.2d 48, 54 (3d Cir.1993) ("the relevant test is not what the defendants purportedly knew, but what [the document] said.")).

There is no dispute in the present case that if the individual Defendants are proper parties, then as citizens of New York, their presence would destroy diversity citizenship, and thereby would deprive this Court of diversity subject matter jurisdiction under 28 U.S.C. § 1332, in light of the lack of federal question jurisdiction as set forth above. However, "a plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460–61 (2d Cir. 1998). *See, e.g., Sonnenblick–Goldman Co. v. ITT Corp.*, 912 F.Supp. 85, 88–90 (S.D.N.Y.1996); *Fahnestock & Co., Inc. v. Castelazo*, 741 F.Supp. 72 (S.D.N.Y.1990); *Allied Programs Corp. v. Puritan Ins. Co.*, 592 F.Supp. 1274 (S.D.N.Y.1984); *Saxe, Bacon & Bolan, P.C. v. Martindale–Hubbell, Inc.*, 521 F.Supp. 1046 (S.D.N.Y.1981).

Under the doctrine of fraudulent joinder, "courts overlook the presence of a non-diverse defendant if from the pleadings there is no possibility that the claims against that defendant could be asserted in state court." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2d Cir.2004). "In order to show that naming a non-diverse defendant is a 'fraudulent joinder' effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *Pampillonia*, 138 F.3d at 461. Put another way, "[j]oinder will be considered fraudulent when it is established that there can be no recovery against the defendant under the law of the state on the cause alleged." *Whitaker*, 261 F.3d at 207.

Whenever removal of an action to federal court is contested, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.' " *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F.Supp.2d 177, 179 (S.D.N.Y.2003) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir.1979)). "This is particularly so where the removing party seeks to oppose a motion to remand on a claim of fraudulent joinder." *Am. Mut. Liab. Ins. Co. v. Flintkote Co.*, 565 F.Supp. 843, 845 (S.D.N.Y.1983). "The defendant seeking removal bears a heavy burden of proving fraudulent joiner, and all factual and legal issues must be resolved in favor of the plaintiff." *Pam-*

*pillonia,* 138 F.3d at 461; *see also Batoff v. State Farm Ins. Co.,* 977 F.2d 848, 851 (3d Cir.1992) (quoting *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir.1990) (noting that joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek joint judgment")). Moreover, "because this is a jurisdictional inquiry, a court can look beyond the face of the complaint in assessing whether there is any possibility of recovery." *Retirement Program For Employees of the Town Fairfield v. NEPC,* 642 F.Supp.2d 92, 96 (D.Conn.2009).

The Defendants here do not allege any outright fraud by the Plaintiff. Therefore, the Court turns to the issue of whether it is possible, based on the pleadings, that the Plaintiff has a claim against the individual Defendants. This standard has been strictly applied by courts in this circuit. *See Stan Winston,* 314 F.Supp.2d at 183 (concluding that defendants had not shown that it was "legally impossible" for nondiverse defendant to be liable under state law); *Nemazee v. Premier, Inc.,* 232 F.Supp.2d 172, 178 (S.D.N.Y.2002) (noting that fraudulent joinder "turns on whether recovery is per se precluded"; "[a]ny possibility of recovery, even if slim, militates against a finding of fraudulent joinder"); *Arseneault v. Congoleum Corp.,* No. 01 Civ. 10657, 2002 WL 472256, at *5 n. 4 (S.D.N.Y. Mar. 26, 2002) ("[T]his court believes that the Court of Appeals did not inadvertently use the language it did.").

## 2. Whether Individuals Can Be Held Liable Under Section 740

█ The issue of under what circumstances an individual defendant may be held liable as an "employer" pursuant to Section 740 is particularly thorny because

of the dearth of precedent under New York law. However, the few cases that have addressed this issue seem to make it clear that individuals can, theoretically, be held liable under the statute. *See Noble v. 93 Univ. Place Corp.,* 303 F.Supp.2d 365 (S.D.N.Y.2003) (finding that the chairman of the board of corporate employer, who owned 100 percent of its outstanding stock, was an "employer" of corporate employee for purposes of New York's whistleblower law); *Granser v. Box Tree South Ltd.,* 164 Misc.2d 191, 623 N.Y.S.2d 977 (N.Y.Sup. Ct.1994) (holding that the chief executive officer and sole shareholder of employer was not entitled to dismissal as defendant in whistleblower action).

Further, this notion seems self-evident in light of the text of the statute, in which "employer" is defined to include "any *person,* firm, partnership, institution, corporation, or association that employs one or more employees." § 740(1)(b) (emphasis added). *See Geldzahler v. New York Med. College,* 746 F.Supp.2d 618 (S.D.N.Y.2010) (comparing Section 741, the definition of which specifically excludes individuals from the definition of employer); *Cf. Sulieman v. Roswell Park Cancer Institute,* No. 05 Civ. 766, 2008 WL 2690278, at *15 (W.D.N.Y. June 30, 2008) (concluding that the definition of Section 741 should be read to include individuals as well, contrary to the plain language of the statute, because enforcement of Section 741 claims must be sought under Section 740, so the two sections should be read in tandem).

█ Nevertheless, the precise contours of individual liability under this particular statute have not been adequately explored, at least by New York state courts. *Cf. Chen v. Street Beat Sportswear, Inc.,* 364 F.Supp.2d 269 (E.D.N.Y.2005) (analyzing New York state labor law claims and federal claims under same "economic reality" test); *Noble,* 303 F.Supp.2d at 376 (noting

that generally in this Circuit the "economic realities" test is utilized to determine whether a given individual is an employer). For the sake of argument, the Court will assume that the "economic realities" test is the relevant examination. This test asks "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment; and (4) maintained employment records." *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (quoting *Carter v. Dutchess Cmty., Coll.,* 735 F.2d 8, 12 (2d Cir.1984) (utilizing "economic realities" test to determine an "employer" under the Fair Labor Standards Act)) (internal quotation marks omitted).

### 3. Whether There is "No Possibility" to State a Claim Against the Individual Defendants Pursuant to Section 740

Under the "economic realities" test, whether the individual Defendants are considered an "employer" within the meaning of Section 740 may turn on a number of factors, included whether these supervisors exercised control over the employee's conduct and the incidents of his employment. For example, in *Noble,* the Court found it sufficient that one of the individual defendants retained supervisory, hiring, and firing powers over the employees and was also the person to whom the plaintiff reported. *Noble,* 303 F.Supp.2d at 376.

Here, as the Defendants point out, the Plaintiff's Complaint makes several factual allegations solely against the Defendant company AAR and not the individual Defendants (*See* Compl. at ¶ 17) ("The aforementioned acts of AAR constitute unlawful discriminatory retaliation against the plaintiff ...."). However, he also makes certain allegations against the individually

named Defendants, albeit in general and at times in barebones language. He alleges that: the three individual Defendants were supervisors (Compl. at ¶ 4) ("At all relevant times herein, Joe DeLardi, Ian Smith, and Salim Kemzy (supervisors) were and are in the employ of co-defendant AAR and were employed in supervisory positions."); they required him to use substandard, unserviceable, and faulty parts (Compl. at ¶ 9); this directive given by these supervisors was in direct contradiction to the rules governing the use of replacement parts (Compl. at ¶ 10); he complained to "them" about the use of the substandard and faulty parts and "they" began to heavily criticize his work (Compl. at ¶ 11); the "Defendants" refused to abate, ameliorate, or attempt to control the use of substandard airline parts (Compl. at ¶ 14); the "Defendants" retaliated against the Plaintiff's complaints (Compl. at ¶ 15); and that the conduct of certain AAR supervisory personnel, presumably the individually named defendants, caused his workplace to be "infected with hostile conduct and retaliation." (Compl. at ¶ 6.)

█ Thus, the Court finds that based on the individuals' status as "supervisors" and the other general allegations regarding their criticisms and retaliatory conduct, there is enough of a basis upon which the Plaintiff can conceivably recover against the individual Defendants under Section 740. The recovery is subject to the Plaintiff demonstrating that the individual Defendants Joe DeLardi, Ian Smith, and Salim Kemzy actually exercised control over the Plaintiff's working conditions and/or participated in the alleged "retaliation for the Plaintiff's whistleblowing." Based on the pleadings, the Court cannot say that there is no possibility, that the Plaintiff cannot state a cause of action against the individual Defendants.

Moreover, the Defendants have not proffered any admissible evidence nor sworn pleading to support their position that: (1) generally, individuals cannot be proper defendants under Section 740; (2) the individual Defendants are not "employers" under Section 740 because they had no part in hiring, discharging or making any other personnel decisions regarding AAR; or (3) the individual Defendants had no part in the complaints or the alleged retaliatory criticism alleged by the Plaintiff. *Cf. Pampillonia*, 138 F.3d at 462 (noting that the defendant submitted an affidavit "averring that the disputed defendant took no part in hiring, discharging or making any other personnel decisions"). This alone is a sufficient ground upon which to deny the Defendants' fraudulent diversity argument. In *Granser v. Box Tree South Ltd.*, 164 Misc.2d 191, 623 N.Y.S.2d 977 (N.Y.Sup.Ct.1994), the state court complaint alleged only that the plaintiff was employed by "defendants". The answer admitted only that the plaintiff was employed by the corporate defendants and did not proffer any evidence or pleading to support their position that the individual defendant was not an employer under Section 740. The Court noted that on this ground, it would not dismiss the plaintiff's claim against the individual defendant, notwithstanding other considerations.

Here, the Defendants claim that because the Complaint does not allege that individual Defendants were "employers" or contain sufficient allegations regarding their conduct to state a claim that they could be considered employers, that the Plaintiff's cause of action cannot stand. However, it is important to note that the present determination is being made in the context of a motion to remand, not on a motion to dismiss or summary judgment. Thus, "[t]he strength of plaintiffs' case ... is not relevant in the present context." *Arseneault*, 2002 WL 472256, at *8. "In order

to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against that defendant; rather, the removing party 'must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the ... defendant in state court.' " *Stan Winston*, 314 F.Supp.2d at 182 (quoting *Pampillonia*, 138 F.3d at 461). "[I]n general there need be only a possibility that a right to relief exists under the governing law to avoid a finding of fraudulent joinder." 14B Wright, Miller & Cooper, § 3723 at 638.

Thus, it is not sufficient for the Defendants to show that the Plaintiff's Section 740 cause of action against the individually named Defendants would not survive a motion to dismiss. *See Stan Winston*, 314 F.Supp.2d at 182 ("In order to show that a defendant was fraudulently joined to defeat removal, it is not sufficient to argue that the complaint fails to state a claim against the defendant ...."); *see also Dexter v. A C & S Inc.*, No. 02 Civ. 6522, 2003 WL 22725461, at *2 (S.D.N.Y. Nov. 18, 2003). Whether or not the Plaintiff has adequately alleged that the individual Defendants are "employers" under the statute and thereby subject to liability is properly resolved on a motion to dismiss, not on a motion for remand. *See Stan Winston*, 314 F.Supp.2d at 182 (finding that whether an individual corporate officer or director knowingly participated in the wrong or had knowledge of the misrepresentation to be liable under New York law was not properly resolved on a motion for remand). A "defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case." 14B Wright, Miller & Cooper, § 3721 at

331. Although the adequacy of the Plaintiff's labor law claim against the individual Defendants may in the future prove to be one without merit, this cannot be determined at this stage.

The Court's conclusion is further reinforced by the rule that removal should be construed strictly by federal courts. Indeed, "[o]ut of respect for the independence of state courts, and in order to control the federal docket, 'federal courts construe the removal statute narrowly, resolving any doubts against removability.'" *Stan Winston*, 314 F.Supp.2d at 179 (quoting *Somlyo v. J. Lu–Rob Enter., Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991)); *see also Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) (federalism concerns call for "the strict construction" of the removal statute); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir.1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."); *Zerafa v. Montefiore Hosp. Hous. Co., Inc.*, 403 F.Supp.2d 320, 324 (S.D.N.Y. 2005) ("Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum."); *Vasura v. Acands*, 84 F.Supp.2d 531, 533 (S.D.N.Y.2000) ("In resolving a motion to remand, courts must be mindful of considerations of federalism and the limited jurisdiction conferred on subject matter jurisdiction courts and should 'strictly construe[ ]' the federal removal statute, resolving all doubts 'in favor of remand.'") (quoting *Miller v. First Security Invs., Inc.*, 30 F.Supp.2d 347, 350 (E.D.N.Y.1998)).

Finally, the fact that the Plaintiff's counsel acknowledged in an affidavit submitted in state court in opposition to Defendants' motion to dismiss his initial complaint, that he failed to state a whistleblower claim against the individual defendants, does not change this result. First, that initial complaint is not at issue in the present case, although it is substantially similar. Second, regardless of the Plaintiff's statements in that affidavit, the state court dismissed the initial complaint only for failure to plead his cause of action with the requisite particularity and specificity; the state court made no mention of individual liability under the statute. Thus, the state court's determination in this regard has no bearing on whether the individually named Defendants were fraudulently joined.

Therefore, assuming for the sake of argument that the "economic realities" test governs the analysis here, the Court finds that the Plaintiff's allegations survive the limited "no possibility" inquiry for the purpose of assessing fraudulent joinder. "Whatever the underlying merits of plaintiffs' claims against [the individual Defendants, D]efendants have not demonstrated that it is legally impossible for [them] to be held liable under New York law." *Stan Winston*, 314 F.Supp.2d at 183. Due to the fact that the removing Defendants have not met their burden in demonstrating fraudulent joinder, the Court will consider the citizenship of the individual Defendants in evaluating its subject matter jurisdiction. All three individual Defendants are citizens of New York, as is the Plaintiff. Accordingly, there is not complete diversity between the parties and this Court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1332(a)(1); *Norwalk v. Air–Way Elec. Appliance Corp.*, 87 F.2d 317, 318 (2d Cir.1937). For this reason, this case must be remanded to state court.

**D.** *As to the Defendants' Motion to Dismiss*

■ The Court is remanding the case to state court. Therefore, it will not delve into the substantive merits of the Plaintiff's state law claim and therefore declines to address the Defendants' cross motion to dismiss the complaint. *See Gleizer v. Diaz, Reus & Targ, LLP,* No. 10 Civ. 7516, 2011 WL 651395, at *2 n. 3 (S.D.N.Y. Feb. 16, 2011) ("Because the Court is granting Plaintiff's motion to remand ... the Court does not address Defendants' cross-motion to dismiss the Complaint.").

Nevertheless, the Court notes that the Defendants' argument that the case should be dismissed because the Plaintiff did not timely pursue his exclusive remedy under the WPP is without merit. As stated above, the WPP does not provide an exclusive remedy for whistleblowing under the facts of this case.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Plaintiff's motion to remand this action to the New York State Supreme Court is granted; **and it is further**

**ORDERED** that the Defendants' cross motion to dismiss is denied without prejudice and as moot; **and it is further**

**ORDERED** that the Clerk of the Court is directed to close the case.

**SO ORDERED.**